# Collins, Appellant, *v.* Clough.

*Land law—Warrants—Surveys—Boundaries—Older and younger locations.*

When the true division line between two or more adjoining tracts alike claimed under original warrants, is the subject of dispute, and tha line once ascertained is a determining factor, the first thing to do is to ascertain, if possible, which of the two tracts was first located.

Where in an ejectment the plaintiffs claim under one warrant and the defendants under three warrants, and it appears that the returns of the surveys for all the warrants were made on the same day and that the locations of the three surveys under which the defendants claimed called for the plaintiffs' warrant on the northeast, while the location of the plaintiffs' survey called for vacant land on its southwest boundary, the evidence is conclusive that the plaintiffs' survey was earlier in time than the defendants' survey, and there is no question of priority to submit to a jury.

As the calls in surveys for trees and other objects indicating corners are conclusive with respect to such corners, so calls for adjoiners, as like declarations of the surveyor, that such adjoining tracts had been previously located, are equally conclusive of the facts declared.

The survey of an independent, separate member of an established block of surveys, is to be located by the work of the surveyor found upon the ground, if it can be traced, that is, by its own marks and monuments, aided if need be by the legal presumption. Where admitted marks and monuments are found answering to the calls of the survey, they establish conclusively the location. If some only of these original

marks and monuments can be found, it is entirely competent to show that others answering to the calls did at one time exist and where. If the testimony fails to supply them all, the legal presumption will supply those unaccounted for.

It is only in the absence of original marks and monuments upon the ground, and the total failure of evidence to supply them, that recourse can be had to the lines and calls of the block, or the lines and calls of any junior member of that block, or any other. Both these methods cannot be resorted to at the same time.

Where in an action of ejectment the return of a survey under which the plaintiffs' claimed shows conclusively that plaintiffs' location was the older in a block of surveys, and the plaintiffs offer evidence of marks on the ground to establish the line, it is error to submit to the jury both the question of the priority of the location and the question of the existence of the marks, and if the trial results in a verdict and judgment · for the defendants, the judgment will be reversed.

*Land law—Evidence—Declarations of deceased surveyor.*

The rule that declarations of a deceased owner with respect to boundary are competent evidence only when made on the ground, applies also to declarations of a deceased surveyor. Such declarations are admissible on the principle of res gestæ, and not to establish reputation.

The field notes of a deceased surveyor are admissible as declarations contemporaneous with the work done on the ground, provided they are authenticated in some other way than by the mere declarations of the surveyor himself.

Argued Oct. 8, 1908. Appeal, No. 43, Oct. T., 1908, by plaintiffs, from judgment of C. P. Forest Co., Sept. T., 1905, No. 5, on verdict for defendants in case of T. D. Collins et al. v. L. S. Clough et al. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Ejectment for 1,200 acres of land in Kingsley and Howe townships. Before THOMAS, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

At the trial when W. W. Whitekin, a witness for the plaintiff was on the stand, he was asked the following questions:

"Q. Did you find a line running the official course? A. Yes, sir. Q. From that spruce? A. Which spruce have you reference to? Q. That spruce at the western corner of 5266? A. I didn't find any original lines, I found a more recent line. Q. Do you know from the appearance of that line, who ran it.

A. I would say Richard Irwin. Q. Where did that line lead? A. It led north forty-five degrees east for 595 rods according to my measurement and stopped on the northeastern line of what is shown on the map as No. 5236. Q. Is there any original work on that line? A. There was none. Q. Was there any original corner when you reached the northeast line? A. There was not. Q. Now where is the black oak located with reference to that point of it striking the line? A. I never saw the black oak. Q. Do you know where it is claimed to be?"

Objected to as incompetent and irrelevant.

"Q. Did anybody ever point it out to you, the location of that black oak that would be the northern corner of 5266? A. Not on the ground, no, sir. Q. Did anybody off the ground ever tell you where it was?"

Objected to.

"Q. Did anybody ever tell you where that black oak was located? A. Yes, sir."

Mr. Cole: 1. We propose to prove by the witness that he knew Mr. Irwin, that he was a surveyor of large experience in this county, that he survyed on the land and lines to which the testimony of the witness refers, that he furnished him field notes and that with the use of these field notes the witness went upon the ground and located the lines, or some of them, to which he has testified, finding the field notes corresponding with the location which he has given. For the purpose of showing that Judge Irwin had actually examined these lines and had knowledge of them.

2. Also propose to show that Richard Irwin, in the conversation referred to and also by field notes, identified the point marked on the map as the Irwin Beech, as the easterly corner of 5266 and the point marked as the Irwin Black Oak as the northeastern corner thereof. This testimony to be followed by the testimony of other persons including the son of Richard Irwin, who was himself a surveyor, who has had custody of his father's field notes since his death, to prove that his father identified the Irwin Beech so called and the Irwin Black Oak so called as the original corners at the northeasterly end of 5266.

3. Also to prove by that witness that the line dating to 1836 is the line with the peculiar marks of Richard Irwin, his father, and to prove that he did in fact run that line in 1836 from the spruce, the southeasterly corner of 5266 to the Irwin beech so called, the easterly corner thereof, and that he then and subsequently located 5266 by his survey as located by the plaintiffs and on their map and by the witness on the stand.

This testimony also to be supplemented by a draft made by Richard Irwin in his lifetime showing the location to which this offer refers, as being identical with the location claimed by the plaintiffs and exhibited by the map.

Objected to as incompetent and irrelevant.

The Court: We will allow you to show what Richard Irwin said while upon the ground or in the presence of any of the marks on the lines, and we will permit this witness to testify to what he did on the ground in pursuance to anything that Richard Irwin told him, but as to statements that Richard Irwin may have made to this witness not on the ground, the objection is sustained and exception sealed for the plaintiffs.

To so much of the ruling as allows the witness to tell what he did in pursuance of the conversation he had with Richard Irwin, exception is sealed for defendants. [1]

S. D. Irwin recalled, examined by Mr. Cole and testified as follows:

"Q. What was your father's business?  A. He was a surveyor.  Q. State whether or not he held any official position as surveyor?  A. He did, for a number of years he was deputy surveyor.  Q. That is, deputy surveyor under the state? A. Yes, sir, he signed his papers 'D. S.,' deputy surveyor for a good many years.  Q. How long did that continue?  A. Well, it was for quite a number of years, I can't remember exactly. Q. What would you say as to whether he held that position in 1836?"

Objected to as incompetent.

The Court: If he knows, I think it would be competent to show it.  Objection overruled and exception sealed for defendants.

"Q. State whether he was the deputy surveyor in 1836?

A. Well, I believe he was. Of course, I was born in 1835, and I refer to papers entirely that I have seen. I know that he surveyed in all counties around, and worked as deputy surveyor a great deal. Q. What counties did he survey in, starting from the time the witness knew? A. Crawford, Clarion, Warren and Mercer. And surveyed in Warren county, north to the state line, in New York. He and his uncle surveyed that along about 1818 or '20. Of course I know my maps and what he showed me, etc. Q. Did you have a conversation with him concerning the location of 5266, and 5282, and what is known as the Mead base line or division line?"

Objected to.

Mr. Murray: It appearing by the witness that he is the son of Judge Irwin and that he was a surveyor of large experience, and it having also appeared that he surveyed the land in question, it is proposed, to prove by the witness, that in the year 1865 and 1866, when the witness went upon the ground to do surveying himself upon the line and land in dispute, that he had a conversation with his father, Judge Irwin, in which he referred to the beech, the easterly corner of 5266, as alleged by the plaintiffs and as shown on plaintiffs' map, and the black oak, the northeasterly corner of the same survey, as claimed by the plaintiffs and shown by their map, that his father stated to him that these were the northeasterly boundary of 5266. It is also proposed to follow this testimony with testimony from the witness on the stand, that with this information, he went upon the land and located the corners designated by his father and traced the line made by his father, leading from the beech to the hemlock, being the southeasterly line of 5266, as his father had located it. This for the purpose of showing the declarations of a deceased surveyor, bearing upon the location in dispute, it appearing by the testimony of the witness that his father left in his hands, before his death, his books and papers relating to the location in dispute as well as other land.

Objected to as incompetent and irrelevant.

The Court: The objection is sustained and exception sealed for plaintiffs. [2]

Verdict and judgment for defendants. Plaintiffs appealed.

*Errors assigned* were (1, 2) rulings on evidence, quoting the bill of exceptions; (12) in qualification of the affirmance of plaintiff's third point, quoted in the opinion of the Supreme Court, and (21) that the charge was inadequate.

*Thomas H. Murray* and *A. L. Cole,* with them *Ritchie & Carringer* and *C. Z. Gordon,* for appellants.—We deny that it is a requisite to the admission of deceased surveyor's declarations that they must have been made on the ground: Potts v. Everhart, 26 Pa. 493; McIldowny v. Williams, 28 Pa. 492; Sheaffer v. Eakman, 56 Pa. 144; Bender v. Pitzer, 27 Pa. 333; Birmingham Borough v. Anderson, 40 Pa. 506; McCausland v. Fleming, 63 Pa. 36.

The prior location of 5266 was a question of law.

If the boundary to be ascertained has been returned as here, as a line fixed by then living trees, and the trees be located, they determine that boundary, and that boundary so located cannot be overborne or contradicted by calls or official distances or other lines or monuments not returned as monuments of the survey in question: Bloom v. Ferguson, 128 Pa. 362; Lehigh Valley Coal Co. v. Lumber Co., 203 Pa. 544; Nieman v. Ward, 1 W. & S. 68.

It is not true that after 113 years the effect of the prior number or date of a warrant for a plotted survey calling for another, located by living corners, can be made a question for the jury, as against the prior location of that other survey: Simpson v. Morris, 3 Yeates, 104.

This is not a case for block location. Each of the surveys here involved upon both sides have marks and monuments of their own to fix their location. Each party claims to have identified two or more corners of each survey by original work; 5266 is shown clearly by the direct testimony upon both sides to have two original corners in place, besides the testimony as to the two other corners. In such case the survey is to be located by its own work: Bloom v. Ferguson, 128 Pa. 362; Lehigh Valley Coal Co. v. Lumber Co., 203 Pa. 544.

*S. P. Wolverton* and *D. I. Ball,* with them *A. C. Brown,*
*W. D. Hinckley, W. E. Rice* and *J. H. Alexander,* for appellees.
—There is no principle of law in Pennsylvania better settled
than that where several tracts of land were originally surveyed
and returned into the land office in a block, they must be lo-
cated on the ground in a block, and the inquiry is not where
the tract should or might have been located, but where it
actually was located, and that every mark on the ground
tending to show the location of any tract in a block is evidence
of the location of the whole block, and therefore of every tract
in the block: Malone v. Sallada, 48 Pa. 419; Pruner v. Brisbin,
98 Pa. 202; Glass v. Gilbert, 58 Pa. 266; Northumberland Coal
Co. v. Clement, 95 Pa. 126; Darrah v. Bryant, 56 Pa. 69;
Fritz v. Brandon, 78 Pa. 342; Christ v. Thompson, 2 Cent.
Repr. 523; Ferguson v. Bloom, 144 Pa. 549; Grier v. Penna.
Coal Co., 128 Pa. 79; Morrison v. Seaman, 183 Pa. 74; Knupp
v. Barnard, 206 Pa. 280.

No cases in Pennsylvania have ever gone to the extent in
the admission of declarations of deceased surveyors, that
counsel for appellants ask the court below to go in these as-
signments.

Under the authorities neither the declarations of the deceased
surveyor nor his filed notes were evidence: Clement v. Packer,
125 U. S. 309 (8 Sup. Ct. Repr. 907); Kennedy v. Lubold, 88
Pa. 246; Kramer v. Goodlander, 98 Pa. 366; Bender v. Pitzer,
27 Pa. 333; Ellicott v. Pearl, 35 U. S. 412.

OPINION BY MR. JUSTICE STEWART, January 4, 1909:

When the true division line between two or more adjoining
tracts, alike claimed under original warrants, is the subject of
dispute, and that line once ascertained is a determining factor,
the first thing to do is to ascertain, if possible, which of the
two tracts was first located. In an issue such as this, the party
holding under the earlier location has certain advantage re-
sulting therefrom; since the prior location limits the call of
the junior, however much such limitation may disappoint.
To state this case: The plaintiffs claim that the land in con-
troversy is included within the limits of warrant No. 5266, one

of a series of warrants issued to George Mead, February 26, 1794, and returned as surveyed and located April 26, 1794. A series of warrants had been issued to Jonathan Mifflin twenty-two days before the Mead warrants were issued. Defendants hold under warrants Nos. 5104 and 5101 of the former series, and No. 5882 of the Mead. These Mifflin warrants though issued earlier than the Mead were returned the same day to · the land office, and the return shows that all, both Mifflin and Mead, were surveyed the same day, April 26, 1794. Defendants claim that the land in controversy is properly included within the limits of their three warrants which as located adjoin each other. The plaintiffs' location is immediately above, that is, to the northeast of defendants' tracts. Their relative positions are about as here indicated.

$$\begin{array}{c|cc|c}
5 & 2 & 6 & 6 \\
5104 & 5101 & & 5182
\end{array}$$

The actual work required in making these surveys together with the others returned as of the same date, seems to suggest inaccuracy in the statement that all the surveys were made on the same day; yet accepting the statement as correct, some one tract must have had priority of location over all the others, and each excepting the last, priority over some other; for there could be no such thing as simultaneous surveys; and it matters not whether the difference between them be measured by hours or days. If No. 5266 had the earlier location, its boundary lines on the southeast thus established would determine the controversy. If defendants' tracts were located before No. 5266, then their northeast boundary wherever established would determine it. Which was the earlier, was a preliminary question, provided the evidence warranted a legal conclusion with respect to it; if not, it became a question which the jury could alone decide. The facts were these. The return of the survey of defendants' opposing warrant for No. 5101, the whole of which lies southwest of No. 5266, calls for George Mead tract No. 5266 as its boundary and adjoiner on the northeast; the opposing warrant No. 5282 calls in part for the same boundary on the northeast; and that of No. 5104 calls for land of George Mead generally as its boundary; whilst

No. 5266 calls for vacant land on its southwest. What other conclusion is possible from this than that No. 5266 must have been located before the others were surveyed? How could its southern line become the northern boundary of the other tracts, except it has been first located. Then, too, the fact that while the return of No. 5266 shows that on three sides it was bounded by specific individual surveys of Mead warrants according to their number, the call is for vacant land on the side where defendants' land adjoins, clearly indicates that the warrants for defendants' lands had not then been laid: Gratz v. Hoover, 16 Pa. 232. In Salmon Creek Lumber Co. v. Dusenberry, 110 Pa. 446, Mr. Justice GORDON says, speaking of just such calls as we have here, "They are part and parcel of the survey, and as infallibly indicate adjoiner, and the adoption of the lines of such adjoiner, as do the calls for trees and other objects indicate corners and courses of lines on the ground." As the calls in surveys for trees and other objects indicating corners are conclusive with respect to such corners, so calls for adjoiners, as like declarations of the surveyor, that such adjoining tracts had previously been located, are equally conclusive of the facts declared. This being the situation, the court should have held as a matter of law that priority of location was with the plaintiffs. With nothing to support a claim for priority in any of the tracts under which defendants hold, except the bare presumption that the surveyor located his warrants in the order in which they were issued, because of his direction so to do, a finding by the jury in their favor on this bare presumption in the face of the positive and unchallenged declarations which appear on the face of his returns, that he had disregarded these directions, could not be sustained. Plaintiffs' third request for instructions was as follows: "The question in this case for the jury to determine is the true location of the southwest line of No. 5266," and this correctly indicated the one governing fact. It should have been unequivocally affirmed; but instead, the affirmance was conditioned on the jury finding that the line had been located prior to the location of the tracts adjoining which are alleged to interfere. This was error, and the eleventh assignment which

complains of it is sustained. So to the assignments which complain of those portions of the charge in which the question of priority of location as between these warrants was submitted to the jury. With the question of priority of location settled, it would yet remain with the plaintiffs to show that the original location of the warrants under which they claim, embraces the disputed territory. The law indicates in no uncertain way the kind of evidence required for the purpose, and makes clear distinction between what is best and what but secondary. Involved in the very idea of priority is that of separate individual location. We are then dealing here with a survey actually made of an independent, separate member of an established block. Such a survey is to be located by the work of the surveyor found upon the ground, if it can be traced; in other words, by its own marks and monuments, aided, if need be, by the legal presumption: Ferguson v. Bloom, 144 Pa. 549. Where admitted marks and monuments are found answering to the calls of the survey, they establish conclusively the location. As has been said, these are the official footsteps of the deputy surveyor, and are therefore the highest and best evidence of the true location. If some only of these original marks and monuments can be found, it is entirely competent to show that others answering to the calls did at one time exist, and where. If the testimony fails to supply them all, the legal presumption will supply those unaccounted for. It is only in the absence of such marks upon the ground, and the total failure of the evidence to supply them, that recourse can be had to the lines and calls of the block, or the lines and calls of any junior member of that block or any other. Both these methods cannot be resorted to at the same time: Ferguson v. Bloom, 144 Pa. 549; Grier v. Penna. Coal Company, 128 Pa. 79. The plaintiffs do not contend that the evidence adduced by them establishes all the monuments called for in their survey as existing at the present time; but they insist that between such as they have shown to exist and those which their evidence shows once existed, their true southeast line was established in the only legal way that it could be determined. In view of the ruling already made, it is unnecessary to state any more

specifically the claim made by the plaintiffs. To do so would require a review of the evidence, and there is nothing in the case that calls for that. It is enough to say that the evidence offered by the plaintiffs was sufficient to carry the case to the jury. If credited by the jury it established a prima facie case entitled to prevail, except as overcome by defendants' testimony. Now the defendants were under the same limitations with respect to their evidence as the plaintiffs. The way was open to them to refute the plaintiffs' claim that there were upon the ground monuments answering to the calls of the survey, and to assail the evidence upon which the plaintiffs relied to show that other monuments at one time existed, though now obliterated, answering to the other calls; and this was the only proper line of defense. With priority of location established for tract No. 5266 as a separate member of its block, until it appeared that it was not possible to fix its true location by work of the surveyor on the ground, neither the line of the block of which it was a member, nor the lines of any members of that block or any other, could be appealed to. The defense proceeded on the assumption that it was for the jury to decide which party had established the earlier location; and defendants' principal effort, instead of being directed to a refutation of the evidence for plaintiffs with respect to the work upon the ground, and its sufficiency for purposes of location, was expended fruitlessly on something which belonged to the court, and not the jury, to decide. It was to this end, the establishment of an earlier survey, that much if not all the evidence adduced by defendants was offered. Could the effort have succeeded, an end to the controversy would at once have been reached, since the northern line of defendants' survey as laid by the surveyor is not in dispute. If the senior survey, it would halt imperatively No. 5266 as the junior survey. But this could not be. The accuracy of the return to the survey of No. 5266 was not impeached, and the return conclusively established priority in it. The result of it all was, that the case was submitted to the jury on a false issue, in a charge which, had the issue been what the court supposed, would have been unexceptionable. Because the issue was miscon-

ceived, the charge must be regarded as inadequate, and the twenty-first assignment of error be sustained. The true and only issue was—did the evidence show marks upon the ground made by the surveyor from which the location of No. 5266 could be determined. If it did, then if such location would include the disputed territory, plaintiffs would be entitled to the verdict. If it did not, then, since it was upon such evidence that plaintiffs' case wholly rested, the plaintiffs would necessarily fail. A like result would follow of course, if location were established and the disputed territory fell without the plaintiffs' lines.

Since the case must be again tried, the question raised in the first and second assignments of error calls for an expression of view. F. F. Whittekin, a witness called by plaintiffs, having testified that in 1882 he ran certain lines upon the ground in dispute, it was proposed to prove by him that Mr. Irwin, a surveyor of large experience, who had surveyed on the land and lines to which the testimony of the witness referred, had furnished him certain field notes, and that with the use of these the witness went upon the ground and located the lines, or some of them, to which he has testified, and found the field notes to correspond with the location he had given. Another offer was to prove by the son of the said Richard Irwin, himself a surveyor, that he had custody of his father's field notes after the latter's decease; but that they have since been lost; that his father identified certain monuments he found on the ground as the original course of No. 5266; that the line dating to 1836 is the line with the peculiar marks of Richard Irwin, and that he located No. 5266 by his survey as it is now claimed to be located by the plaintiff. These offers were rejected because the declarations proposed to be proved were not made on the ground.

That declarations of a deceased owner with respect to boundary are competent evidence only when made on the ground is admitted; but it is contended that such limitation ought not to, and does not, apply to the declarations of deceased surveyors. If the rule be as asserted by the learned judge in rejecting the offer, its reasonableness may be safely

assumed. We need only concern ourselves to inquire whether the law in Pennsylvania makes the distinction here set up. Boundary is one of the excepted issues wherein reputation and hearsay of deceased persons are received in evidence. The offer here, however, was not to show reputation, but specific statements of one since deceased as to what he actually found when making his survey. The distinction is not unimportant. The rules governing hearsay evidence with respect to reputation, are not the rules which govern where the offer is to prove independent facts by hearsay evidence. Declarations of deceased owners and surveyors are admissible only as they speak to such independent facts, not as establishing reputation, but as tending to establish certain relevant facts which because of the lapse of time are not susceptible of more direct proof. It is true historically that when this exception to the general rule was first allowed, no other limitations were imposed except that it must be first made to appear that the declarant had peculiar means of knowing the facts to which he spoke, and had no interest to misrepresent. But it is equally true that when the exceptions came to be applied in Pennsylvania, it was with quite another limitation, which naturally narrowed its field of operation, viz.: that the declarant must have been on the land at the time the declaration was made, and engaged at the time in pointing out the boundaries of the land. Mr. Wigmore in his valuable treatise on Evidence, sec. 1567, speaking of this additional limitation, says it is purely a Massachusetts variant, "which has since unfortunately been adopted thence by Maine, New Jersey, Pennsylvania, and perhaps in other jurisdictions also." Our reference here to this text is more especially to show the reason on which the additional limitation or restriction which the author deprecates is based. In the section preceding the one from which we have quoted, the author states that in some jurisdictions individual statements taken solely on the credit of the individual declarant, were justified under what he calls the reputation exception; while in Massachusetts, the res gestæ doctrine, whether in the general and loose sense of something done, or in some special relation to an adverse possessor's declaration, was regarded as

covering these statements.   Here we have the variance and the reasons for it clearly indicated—in some jurisdictions the declarations are admitted on one principle, and in others on a wholly different one.   In the jurisdiction in which the declarations are admitted under the reputation exception, all that is required is that the declarant be shown to have had peculiar means of knowledge of the fact, and without any interest to misrepresent: in the jurisdictions where the declarations are admitted on the principle of res gestæ, they must be shown to have been made while in the act of pointing out the boundary or determining the line, which must necessarily have occurred on the ground.   If this be the true history of the variance, and it admits of no question, then the additional limitation called the variant would not only seem to be a nec-essary and logical deduction, but it so well accords with the established principles of evidence, that it would be far more correct to say of any opposing rule, that it was the variant.

The general rule is thus stated in Best on Evidence, sec. 501. "Allied to these are declarations in the regular course of business, office or employment, by deceased persons who had personal knowledge of the facts, and no interest in stating an untruth.   But the rule as to the admission of such evidence, is confined strictly to the particular thing if it was the duty of the person to do: and unlike a statement against interest, does not extend to collateral matters, however closely connected with that being.   And it is also a rule with regard to this class of declarations, that they must have been made contemporaneously with the acts of which they relate." If the admission of declarations of persons deceased can be justified only on the ground of res gestæ, something done must be shown; and it must appear that the declarations were made in connection with the doing.   In the case of declarations of deceased owners, the thing done would be the pointing out the boundary; in those of deceased surveyors, the professional work in connection with the survey of the land.   Both involve being on the ground; and thus we have explained the meaning of the limitation as ordinarily expressed.   Now there can be no question but that in Pennsylvania while evidence of reputation is ad-

mitted where nothing better is obtainable, declarations of deceased owners and surveyors, are admissible, not to establish reputation, but solely on the ground of their being part of the res gestæ. In Kennedy v. Lubold, 88 Pa. 246, Agnew, C. J., says, with reference to the facts of that case, "Herrington in 1837, and Fenton in 1838, were engaged in professional acts, the latter locating the warrant officially under his oath of office. The declarations as to the corners when found, blocked and counted, were a part of res gestæ, and so far from being doubtful evidence were competent, and always admitted when the transaction is old and the surveyor dead." This being the ground of their admissibility, no reason can be suggested why the limitation should not be the same in case of surveyors, as in the case of owners. So much for the principle. Now as to the adjudications. Counsel say that no case can be found in our reports where the declarations of a deceased surveyor have been excluded because not made on the ground. This may be true; but it is more certainly true that no case can be found in which the declarations of a deceased surveyor not made on the ground were admitted. The diligence of counsel has failed to discover any such case. They rely with some confidence on Borough v. Anderson, 40 Pa. 514; but this case gives no support whatever to their contention. The declarations there received were offered in connection with the general plan of lots in which the public generally were interested. The case distinguishes very clearly between declarations in aid of private rights, and those affecting the public at large, and the decision is made to rest on such distinction. "But," says Reed, J., in the course of his opinion, "the declarations of a deceased surveyor in relation to lines run, or plans made from actual survey, are clearly evidence in an instance like the present, which concerns a matter of general if not public interest." A careful examination of our cases where declarations of deceased parties have been made the ground of decision or comment,—and they are numerous,—will show conclusively that in this jurisdiction at least it has always been understood that declarations of deceased surveyors, and declarations of deceased owners are alike subject to the same limitation; that is to say, in either

case to be admissible, they must be shown to be part of the res gestæ. When the declarations of the surveyor or owner are so far separated from the occurrence to which they relate as not to form a part of a continuous whole they are properly excluded. This ruling would admit the field notes of the deceased surveyor as declarations contemporaneous with the work done on the ground, provided they were authenticated in some other way than by the mere subsequent declaration of the surveyor himself; and in this case we think they were. It would exclude so much of the offer as proposed to prove the later verbal statements of Mr. Irwin to his son as to what he found on the ground when engaged in making his survey.

Judgment reversed, and venire de novo awarded.