## WILCOX v. JENISON.

1. BOUNDARIES—DOCUMENTARY EVIDENCE—RECORDS OF SURVEYS—ADMISSIBILITY IN EVIDENCE.

Surveys of State, but not Territorial, surveyors, are admissible in evidence under Act No. 196, Pub. Acts 1915, § 102 (1 Comp. Laws 1915, § 2486), providing that "records of surveys, field notes, and calculations made by any former county surveyor which has been, or shall be, on file in the office of the county surveyor, register of deeds or county clerk for a period of fifteen years or upward * * * shall be admissible in evidence of the facts they contain in any court of record."

2. SAME.

   Records of surveys and other papers that have been sub-
   ject of statutory regulation are not admissible as ancient
   records.

3. EVIDENCE—RECORDS OF SURVEYS—ADMISSIBILITY.

   Under Rev. Stat. 1846, chap. xiv, §§ 96, 97, 102, providing
   that certain records of surveys made by the county sur-
   veyors since the organization of the State government may
   be received in evidence, records of surveys are not com-
   petent evidence unless made by county surveyors.

4. SAME—SURVEYORS—MISTAKES—DECLARATIONS OF DECEASED SUR-
   VEYOR—ADMISSIBILITY.

   Declarations by a surveyor, since deceased, to his employer
   that he had made a mistake in a former survey are ad-
   missible where such mistake was discovered during the
   course of the second survey, but it is not apparent whether
   the surveyor made the declaration in the course of such
   second survey.

5. APPEAL AND ERROR—INSTRUCTIONS—CHARGE AS WHOLE.

   Where the charge of the court, taken as a whole, correctly
   states the law as applicable to the particular case, and
   clearly defines the issue, the fact that sentences are ob-
   jectionable, when considered independent of the context,
   does not constitute reversible error.

6. ADVERSE POSSESSION—BOUNDARIES—INSTRUCTIONS — EJECTMENT
   —GOVERNMENT SURVEYS—BURDEN OF PROOF.

   In an action of ejectment, in which the boundary line be-
   tween two tracts of land was in dispute, the charge deal-
   ing with the manner of making government surveys and
   their conclusiveness, the establishment of boundary lines
   by adverse possession, and the burden of proof, *held*, to
   be sufficient.

Error to Oakland; Smith, J. Submitted June 18,
1917. (Docket No. 64.) Decided September 27, 1917.

Ejectment by Mary M. Wilcox against Eugene A.
Jenison. Judgment for plaintiff. Defendant brings
error. Affirmed.

*Merriam, Yerkes & Simons* and *John H. Patterson*
(*Lewis H. Paddock,* of counsel), for appellant.

*Peter B. Bromley* and *Pelton & McGee,* for appellee.

MOORE, J.   Ejectment was brought by plaintiff against defendant to recover possession of approximately 16 acres of land which she claims is located in the northwest quarter of section 27, and northeast quarter of section 28, Royal Oak township, Oakland county.   Defendant's claim is that the land in question is located in the southeast quarter of 28, and the southwest quarter of 27, so that the important question in dispute is as to the location of the east and west quarter line of sections 27 and 28.   In the opening of his charge to the jury the trial court stated somewhat in detail the claims of the parties to the litigation, and, after doing so, turning to counsel, he said:

"Do you think of anything further I need to say without going into details?
"*Mr. Bromley:* No, your Honor.
"*Mr. Patterson:* No, sir."

He then read to the jury a great many written requests which had been preferred by counsel.   Among them the following:

"On the part of the plaintiff I charge you as follows: It is the claim of the plaintiff in this case that her husband procured the premises in question under a land contract in January, 1889.   And that in May, 1889, the plaintiff went into possession of the premises and remained in possession of the premises from May, 1889, until the disputed strip was fenced in by the defendant, Jenison, in March, 1903.   There is no dispute but that the description of the deeds to the plaintiff recite that the southern boundary of their lands should be the quarter section line.   In other words, it is undisputed that the deeds themselves recite that the premises in the northeast quarter of section 28 and also that portion of the northwest quarter of section 27 lying west of Woodward avenue should belong to the plaintiff.   It is also undisputed that the defendant's land, according to the description contained in

his deed (or deeds it should be), should lie immediately south of plaintiff's land. The question therefore for you to determine is 'Where is the true quarter section line?' It is the claim of the plaintiff that the true quarter section line is a straight line approximately equidistant from the north and south boundary line of the section.

"(8) I further charge you that the government lands are required by the United States government to be surveyed into sections one mile square. The government surveyors are required in making such surveys to place monuments at the corners of the sections and also on the four sides of the sections halfway between the corners. These latter are called quarter posts, being half a mile from the north and south lines of the section and dividing it into quarter sections of equal size. The lines between the quarter posts are not run by the government surveyors, but are found by extending a straight line from one quarter post to that on the opposite side of the section. I further charge you that when a boundary line between adjoining proprietors is disputed, the true line is to be determined in accordance with the original government survey, unless fixed by agreement, acquiescence, or adverse possession. I further charge you that as between surveys the original government survey must control, although it may have been incorrect at the time it was made.

"(9) I further charge you that it is the duty of the surveyor to follow monuments as called for in the original government field notes; and if they find a quarter section corner extinct, that is lost, and are unable to determine its original location from the field notes and plats of the government surveyor, then it is their duty to re-establish it equidistant, that is equal distance and in a straight line between the section corners.

"It should be quarter section corner shouldn't it?

"(10) It is the claim of the plaintiff that the original government survey marked the quarter section corners of sections 27 and 28 at the point designated at the Wilmarth corner; that the original government field notes call for a birch tree at that point. It is the claim of the plaintiff that the evidence of the

birch tree was found and seen by Surveyor Wilmarth
and by Mr. Wilcox and by Mr. Thomas Tracey, the
chainman. If you are satisfied by a fair preponderance
of evidence that the government survey called for a
birch tree at the disputed quarter section corner, and
if you further find by a fair preponderance of the evi-
dence that there had been a birch tree at about the
quarter section corner as claimed by the plaintiff, and
that the said birch tree was a monument marked under
the original government survey as the quarter section
corner, then I charge you you have the right to con-
sider that corner indicated by a birch tree in the origi-
nal survey as the true quarter section line between sec-
tions 27 and 28, and in that event your verdict should
be for the plaintiff, unless it is settled by the other
proposition in this case.

"(11) I charge you that it is a well-settled law in
this State that surveyors making surveys after the
original government survey is made cannot make
monuments of their own which shall control the gov-
ernment surveyors' measure, and that the original
government survey must always control, and the effort
of the surveyor should be to find, if possible, where the
lines are on the ground; the original survey must con-
trol as between the surveys, I mean, although it may
have been incorrect at the time it was made. If you
find, therefore, that the Wilmarth survey was based
upon the government survey and the government field
notes, and if you find that the line located by Mr. Wil-
marth is on the line located by the original government
survey, then you should treat the line as established
by Mr. Wilmarth to be the true line, and your verdict
should be for the plaintiff, and I add, unless the line
between these parties has been settled by agreement,
acquiescence, or adverse possession; that is, by the
second proposition in the case.

"(12) The defendants have been permitted to offer
in evidence some records of field notes and plats pur-
ported to be made by Surveyors Russell and Serrell,
but I say to you that unless you are satisfied from the
evidence that such surveys were based upon the origi-
nal government field notes, and that they were made
in accordance with the monuments as called for in
the original government survey, or the original gov-

ernment field notes, then I charge you that such survey should not prevail as against the Wilmarth survey, provided (notice) provided you find the Wilmarth was made in accordance with and based upon the field notes of the United States government as offered in evidence by the plaintiff; in other words, unless you find that the Wilmarth survey coincides with the original government line. * * *

"(19) It is the defendant's claim that he received the property by deed in 1897, but that no fence was built around the premises until 1903. It is the claim of the plaintiff that the defendant never actually occupied the land and never claimed to own the disputed strip in question until on or about the time he put the fence around the disputed land, which was in 1903. Now in order for the defendant to avail himself of title by adverse possession, which would apply to both parties by means of the fence he built in 1903, such possession under the statute must be open, notorious, continuous, exclusive, visible, and distinct, as well as adverse, and such possession must have been for a period of 15 years prior to the starting of this suit. * * *

"(22) I further charge you that the United States statute requires that the government surveyors, that is, men surveying government lands, to set the quarter section posts at equidistance from the north and south lines of the sections, and that the quarter section lines shall run through the middle line of the said sections; and it is the duty of the government surveyor to make his survey and set the quarter section posts in this manner, and he is presumed to have done his duty and to have placed these lines and posts as the law requires him to do.

"(23) The burden therefore is upon the party who claims the government surveyor made a mistake in his survey to show that the government surveyor did commit the blunder as claimed and failed to do his duty, and unless the defendant has shown that the government surveyor did make a mistake, and that the Wilmarth line is incorrect, then on this branch of the case, you must find for the plaintiff. * * *

"(30) Taking up now gentlemen, the claims of the defendant, I charge you as follows: The United States

government in its original survey fixed section corners and quarter posts. The division of the section was afterwards done by surveyors and points established thereon from the original corners and quarter posts thereon, and if the government surveys had all been accurate and in accordance with the rules laid down for the guidance of the surveyor there would commonly be no difficulty in locating the government subdivisions with reasonable certainty even if the monuments had disappeared. But government surveyors were not always accurate in their work, and monuments do sometimes disappear. That a fence of long standing erected upon what the parties have called the true line and up to which they have improved and cultivated is better evidence of the true line than a survey made after the monuments had disappeared and not while they were in existence.

"(31) It is the claim of the defendant that the north boundary of defendant's land is the east and west quarter line running through a part of sections 27 and 28 in the township of Royal Oak, and is the line indicated in red on the map received in evidence and designated as plaintiff's Exhibit No. 3, and that this line does not run due east and west in a straight line, and has been referred to in this case by defendant's counsel as the 'true quarter line,' while the plaintiff claims that the quarter line is the line referred to as the 'Wilmarth line,' and if the jury find by a preponderance of the testimony in the case that the quarter line is substantially along the line as contended for by defendant as the true quarter line, then the plaintiff cannot recover, and your verdict would be for the defendant. I add the same as I did to the plaintiff's requests, unless the boundary line has been settled under the second proposition by means of adverse possession.

"(32) I further charge you that it is the claim of the defendant that this so-called 'true quarter line' was marked by an old fence substantially along such true quarter line, and that such fence constituted a boundary line between the lands of adjacent owners for more than 15 years. Now if you find from a fair preponderance of the testimony that such old fence did exist and was acquiesced in as a boundary line, then the plaintiff cannot recover, and your verdict would be for the defendant.

"(33) I further charge you that in determining the true boundary line between the parties to this suit, you may consider the testimony with respect to any old fences between the disputed strip of land, and if you find from the testimony that an old fence for 15 years continuously or more ran along the north edge of the wood lot in dispute, and that such fence constituted the boundary line between the disputed strip of land adjoining to the north and was acquiesced in as such boundary line by such owners, then it will be your duty to return a verdict for the defendant regardless of whether such line actually constituted the east and west quarter line of sections 27 and 28 or not. That is, you would settle it upon the second proposition, without regard to the surveyor's lines.

"(34) I further charge you that long acquiescence in a supposed boundary line extending for a period of 15 years or more between adjoining landowners, should be considered as such an agreement upon such lines as to be conclusive, even if originally located erroneously, and if you should find that the north line of the wood lot, so-called, has been acquiesced in for a period of 15 years or more by the owners of the lands adjoining on the north and south as the boundary between said lands, then you must find that such line is the true boundary between the parties to this suit, and in that event your verdict must be for the defendant.

"(35) I further charge you that long acquiescence in and recognition of a boundary line between adjoining owners of land extending over a period of 15 years or more is sufficient to support a claim that said line is the true boundary between such owners, and such line should not be disturbed or upset by any surveys based on alleged original monuments or courses of direction.

"The law was evidently framed by the legislature to fix and end litigation, so that after a while parties cannot bring their suits; that is, if not brought within 15 years they shall be precluded thereby from an attack of a survey.

"(36) The sole question for determination by you in this case is the true boundary line between the adjoining lands owned respectively by the plaintiff and

the defendant, regardless of the fact whether the true boundary line between these parties is also the true quarter line of sections 27 and 28 or not. (This is the part I think it is meant to cover.) If you find from the testimony that the line as claimed by the defendant has been acquiesced in for 15 continuous years or more by the plaintiff or his predecessors in title and the defendant or his predecessors in title as the boundary line between said lands, the plaintiff is not entitled to recover, and the verdict in that event should be for the defendant. * * *

"(42) Now notice this, gentlemen, because there will be some changes made in it. The burden of proof is on the plaintiff to establish her claim by a fair preponderance of the evidence; unless the plaintiff has so established her claim by a fair preponderance of the evidence, your verdict would be for the defendant. There is an exception to this rule, to wit: If she has established by a fair preponderance of the evidence that the Wilmarth survey, Wilmarth line, is in fact the original government survey line, then the burden is upon the defendant to show that the boundary line between these parties ought to be elsewhere. Now that will require a little explanation to make it consistent and harmonious. I have said to you that the presumption was in favor of the government surveys always, but that presumption may be overcome by evidence. The presumption also is that the government surveyors do their duty and make no mistakes, and that the center line will be in the actual center of the section, that is, the quarter line will be, but that presumption also can be overcome.

"(43) Now it devolves upon the plaintiff to establish as it would in most cases to prove by a fair preponderance of the evidence along with the presumption where the center line is, and the plaintiff has endeavored to do that by presenting the Wilmarth line. Of course the burden of proof would be upon the plaintiff because Wilmarth surveyed it out first as a lost line, and not as the true government line, but a few years later Wilmarth and Wilcox and the chainman— I forget his name; Tracy I think it was—claim to have discovered such a monument as indicated that the line, the Wilmarth line, was in fact also the government

line. Now, to that point the burden of proof is upon the plaintiff, but if you are satisfied by a fair preponderance of the evidence that Wilmarth did finally establish what was the actual government line, then the burden of proof shifts to the defendant, and the burden of proof would be on the defendant then to prove by a fair preponderance of the evidence that Wilmarth was wrong, and that the government survey was not in the center of the section, and that is what it was attempted to do by means of other surveyors.

"(44) The burden of proof would be upon the defendant to prove by a fair preponderance of the evidence what he claims under the second proposition, namely, fixing the line where it is because of adverse possession.

"In other words, to state it as the lawyers put it, if the plaintiff has established by fair preponderance of the evidence where the government survey line is, and that it is actually in the center, then the defendant assumes the affirmative of the defense, because he must assume, as far as the affirmative of the defense is concerned, the burden of proof. Now the burden of proof does not necessarily depend upon the number of witnesses sworn on the part of any party on any one proposition. * * *

"(46) The usual definition of preponderance of the evidence is such evidence as, when weighed with that which is offered to oppose it, has more convincing power in the minds of the jury. It is not a technical term at all, but means simply that evidence which outweighs that which is offered to oppose it. It does not necessarily mean that a greater number of witnesses shall be produced on the one side or the other, but that upon the whole evidence the jury believes the greater probability of the truth to be upon the side of the party having the affirmative of the issue."

There was much more of the charge than we have quoted. The jury found a verdict in favor of the plaintiff. The case is brought here by writ of error.

The errors assigned are grouped by counsel as follows:

"(1) Was there error in the exclusion and admission of evidence at the trial?

"(2) Was there error in the charge of the court?

"(3) Was there error in the court's refusal to charge as requested by defendant?

"(4) Was the verdict against the defendant contrary to law and against the weight of evidence?   .

"(5) Should the motion for a new trial have been granted?"

1. It is said the court erred in excluding certain old surveys, field notes, and other papers. The old records mentioned do not appear in the printed record, and it was agreed that the originals might be used in the oral argument. Counsel are not agreed as to which of these records were excluded. It is claimed that a book of surveys made by Hervey Parke in 1845-46 and a book of surveys made in 1865 were excluded, while counsel for appellee state they were admitted, and cite from the record as follows:

"*Q.* I show you page 28, and ask you what that plat refers to?

"*A.* Section 27, town 1 north, range 11 east, recorded on page 39, Book of Oakland County Records, county survey by Hervey Parke.

"*Q.* Does that show the east and west quarter line through section 27 on that plat?

"*A.* It does. This is the line at an earlier day; consequently a little at variance with the other one. North 88° 20″ W.

"*Q.* Are there any figures to note how far it is from the quarter section corner on the west side of the section to the north line of the section?

"*A.* Yes, sir; it is marked 33 chains 75 links. * * *

"*Q.* Now what connection does the book show with reference to this quarter line? Without taking time to go over all the monuments, give us the monument that the book shows with reference to the east and west quarter line of that plat. * * *

"*Q.* On page 30 you will state whether there is an explanation, or can you read the explanation of the survey on page 30?

"*A.* Yes. To re-establish or find the west quarter post on section 27. * * *

"*Q.* Yes.                .

"*A.* That gap 1 chain 45 links was described by—

"*Mr. Bromley:* Now I object to that; that is not a part of the record.

"*A.* Yes it is. Found a discrepancy of 1 chain short.

\* \* \*

"*Q.* Well what does it show about that quarter post on page 31?

"*A.* Set quarter post being the intersection of the line and (witness hesitating, using reading glass) the proportionate measurement made upon corner and records and set recorded survey, yes, and said point was recognized and identified by residents of a number of years.

"*Q.* Mr. Slater, I show you page 32 of book, Exhibit 10, and I will ask you if you will read what page 32 is?

"*The Court:* Is that the same exhibit?

"*Mr. Patterson:* Yes, sir."

We have a statute reading as follows:

"All such records of surveys, field notes, and calculations made by any former county surveyor, which have been or shall have been on file in the office of either the county surveyor, register of deeds or county clerk for a period of fifteen years or upwards, even though such records or the certification thereof shall not conform to the requirements specified in section one hundred of this act, shall be admissible in evidence of the facts they contain in any court of record in this State." Act No. 196, Pub. Acts 1915 (1 Comp. Laws 1915, § 2486).

The record is clear that all the records coming within the terms of the above statute were admitted, but it is claimed this law was unquestionably passed to include Territorial as well as State surveyors, and under it the Hervey Parke survey should have been received in evidence. It would seem to be a reply to this claim that the statute does not so read. It is also claimed that these old surveys commencing with the Wampler survey of 1816 should have been admitted in evidence, not only under the statute, but also because

of their being ancient records, counsel citing *Murphy* v. *Cady,* 145 Mich. 33 (108 N. W. 493), and other authorities. A reference to them will show that they do not relate to records of surveys and other papers that have been the subject of statutory regulation.

In addition to the statute quoted we should mention sections 96, 97, and 102, chap. 14, Rev. Stat. 1846, which provide, in substance, that certain records of surveys made by county surveyors since the organization of the State government may be received in evidence. Our attention has not been called to any statute making any records of surveys competent evidence unless they are made by county surveyors. And all the records offered were admitted if shown to have been made by county surveyors. The legislature having provided what records of surveys are admissible, does it not follow that all others are excluded? To permit a party to procure any surveyor to make and file an *ex parte* survey which may affect the lands of another would be a dangerous construction to put upon the statute.

A survey made by Mr. Russell was introduced in evidence, and much reliance was placed upon it by defendant. Mr. Wilcox assisted Mr. Russell in making this survey, and was allowed to testify as to what was said and done by Mr. Russell during its progress, and was also allowed to testify that Mr. Russell later, after making a second survey, told him he had made a mistake in the former survey. This is said to be error for the reason that it is a self-serving declaration made by an employee to his employer.

As to the declarations of a surveyor who is dead it is said:

"The acts and declarations of a surveyor since deceased, while surveying an adjoining lot, are admissible on the question of a boundary, if he was not interested as owner in either lot at the time he made such

declarations. If the location of a tract of land is in dispute, declarations of a surveyor, since deceased, made by him while on the ground and at the time of examining the lines of the tract, are admissible in evidence." 2 Jones on Evidence, § 306.

See, also, 1 Elliott on Evidence, § 403.

The rule as given in 15 Am. & Eng. Ann. Cas. p. 874 (*Collins* v. *Clough*, 222 Pa. 472), is as follows:

"Subject to some qualifications, it is a general rule that upon questions of either public or private boundaries the declarations of deceased surveyors or their assistants in respect thereto, as, for example, in respect to the location of a corner or line, are admissible in evidence" (citing a number of cases).

As to the last conversation it appears the surveyor made a second survey, at which time he discovered the error made in the first survey. It does not appear whether the surveyor made this last declaration when engaged in the survey, but it does appear he discovered the error while determining the lines of these parcels; that Mr. Wilcox was living upon the land, and the surveyor, Mr. Russell, directed him to correct the error which he had previously made. There is such a direct connection with the last statement of Mr. Russell with the last survey in which he discovered his mistake as to bring the testimony within the rule.

Groups 2 and 3 may be considered together.

It has been said:

"Where the charge of the court, taken as a whole, correctly states the law as applicable to the particular case, and clearly defines the issue, the fact that sentences are objectionable, when considered independent of the context, does not constitute reversible error." *Provost* v. *Brueck*, 110 Mich. 136 (67 N. W. 1114).

See, also, *Smalley* v. *Railway Co.*, 131 Mich. 560 (91 N. W. 1027) ; *Beattie* v. *City of Detroit*, 137 Mich. 319 (100 N. W. 574) ; *Bouma* v. *Dubois*, 169 Mich. 422 (135 N. W. 322).

We have quoted sufficiently from the charge to show that the material questions involved were very fully and fairly stated to the jury.

The other assignments of error have been examined, but do not call for discussion.

Judgment is affirmed, with costs to the plaintiff.

KUHN, C. J., and STONE, OSTRANDER, BIRD, STEERE, BROOKE, and FELLOWS, JJ., concurred.