## Hallman v. Turns

*James L. Goldsmith,* for plaintiff.
*J. Stephen Feinour,* for defendant.

MORGAN, *J.,* October 27, 1982—This is an action in ejectment brought by plaintiffs Marlin A. and William D. Hallman against defendants Clarence B. Turns, Sr. and his wife Mary E. Turns. A jury trial resulted in a verdict for plaintiffs. We have before us now defendants' motions for a judgment non obstante veredicto and alternatively for a new trial. We find no merit in defendants' arguments and therefore we deny their motions.

Our Supreme Court has recently stated: "A judgment n.o.v. should be entered only in a clear case, and any doubts should be resolved in favor of the verdict. In considering a motion for judgment n.o.v., the evidence, together with all reasonable inferences therefrom, is considered in the light most favorable to the verdict winner [citations omitted]." Atkins v. Urban Redevelopment Authority of Pittsburgh, 489 Pa. 344, 414 A.2d 100, 103 (1980). By this standard we review the facts of the case as developed by the evidence.

The land involved in this action consists primarily of mountainous, unimproved land situated in Fishing Creek Valley, Middle Paxton Township, Dauphin County, Pa. Originally the land of both parties was owned by Sam and Jennie Sweigart. The Sweigart tract resembled a rectangle roughly twice as long as it was wide, running longitudinally more or less north-south. A finger of the original Sweigart tract extended northwards from the northwestern corner of the property to connect with and give access to Fishing Creek Valley Road, Rte. 443. The original Sweigart tract comprised 143 to 144 acres.

In 1928, the Sweigarts sold off a portion of their property located in the northeastern corner of their original tract to Clarence E. Sellers and his wife.

This conveyance created the southern boundary of the Sellers parcel which is in dispute in this case. The deed given by the Sweigarts to the Sellers describes this contested boundary as running "[from a stake]; thence in a north westerly direction along the lands of S. C. Sweigart [sic] twenty eight and five eighth (28⅝) perch to a locust tree thence in a westerly direction along lands of some thirty six and one half (36½) perch to a stone corner." (Dauphin County Deed Book A, Vol. 22, p.339). In 1951, the Sellers sold the whole of this same parcel of land to George W. and Mary T. Swavely (Dauphin County Deed Book Z, Vol. 34, p. 508). Also in 1951 the Swavelys resold this entire parcel to the present defendants, Clarence B. and Mary E. Turns (Dauphin County Deed Book Z, Vol. 34, p. 511; Dauphin County Deed Book D, Vol. 35, p. 463). Thus the present defendants own no more than the original grant from the Sweigarts to the Sellers.

Through the years the Sweigarts conveyed one other parcel of their property which concerns us here, and that was to Theodore Moore in 1939. This 18,000 square foot rectangular parcel was bounded on its eastern, southern and western sides by the Sweigart tract and on its northern boundary by the then Sellers property (Dauphin County Deed Book U, Vol. 24, p. 547).

In 1961, Jennie D. Frantz Sweigart, Mr. Sweigart's widow, sold all the rest of the original Sweigart tract to the Trustees of Troop 8, Keystone Area Council, Boy Scouts of America (Dauphin County Deed Book H, Vol. 47, p. 130). By two deeds, one in 1976 and the second in 1978, the Trustees of Troop 8 conveyed their entire holdings to the present plaintiffs, Marlin A. and William D. Hallman (Dauphin County Deed Book L, Vol. 62, p. 847); Dauphin County Deed Book F, Vol. 65, p.

953). Hence the Hallman's property shares a common boundary with the Turns' property, being the southern boundary of the Turns' property and, except for the 18,000 sq. ft. notch occupied by the Moore conveyance, part of the northern boundary of the Hallman's property.

The beginning and ending points of this boundary are not in dispute. However, defendants claim that, instead of proceeding northwestwardly and then westwardly from the easternmost common point, the boundary actually runs first southwestwardly and then northwestwardly. This line would give defendants a diamond-shaped additional 3.94 acres and their property would then completely surround the Moore tract. In recent years defendants have begun to fence this southerly line.

Plaintiff called two witnesses who had been shown the true, northerly, boundary line by Mr. Sweigart himself. Plaintiff also called two professional surveyors who, through field work and a reconciliation of all deeds in the disputed area, found the true line to be the northerly one. We find that this evidence amply supports the jury's verdict and therefore we deny defendants' motion for a judgment n.o.v.

In their alternative motion defendants propose a number of arguments which they contend require the granting of a new trial. First defendants contend that we erred in admitting the testimony of John Mehaffie concerning an incident in the late 1930s when Mr. Sweigart, now deceased, walked along the boundary between his tract and the Sellers property, specifically pointing out the boundary to Mr. Mehaffie. In Pennsylvania declarations of a deceased owner with respect to boundary are competent evidence, in exception to the hearsay rule,

when the declarant owner "was on the land at the time the declaration was made, and engaged at the time in pointing out the boundaries of the land." Collins v. Clough, 222 Pa. 472, 484, 71 A. 1077, 1080 (1909). See also, Dawson v. Coulter, 262 Pa. 566, 106 A. 187 (1919). This evidence will be admitted when because of lapse of time no more direct evidence is avaible. Collins v. Clough, Supra; Hostetter v. Commonwealth, 367 Pa. 603, 80 A.2d 719 (1951). Defendants' objection to Mr. Mehaffie's testimony on this matter are meritless. The crucial piece of physical evidence of the boundary called for in the deed, i.e., the locust tree at the point of the angle constituting the disputed boundary, is admitted by both parties to be no longer there. Thus Mr. Mehaffie's testimony was properly admitted. Our discussion here also disposes of defendants' second argument that we improperly instructed the jury that such reputation and hearsay evidence as Mr. Mehaffie offered may properly be considered. See Hostetter, supra, 367 Pa. at 606, 80 A.2d at 720.

Defendants thirdly argue that we erred in admitting into evidence the 1978 quitclaim deed given by the trustees of Troop 8 to the plaintiffs, and in excluding newly discovered evidence of the dissolution of the trustees prior to the execution of the quitclaim deed. We think not. Defendants admitted, in their answer, plaintiffs' averment that the trustees had executed the 1978 quitclaim deed. "Admissions of this type, i.e., those contained in pleadings, . . . are usually termed 'judicial admissions' and as such cannot later be contradicted by the party who has made them." Tops Apparel Mfg. Co. v. Rothman, 430 Pa. 583, 587, 244 A.2d 436, 438 (1968). Furthermore, defendants also waived the affirmative defense they allege because they did not raise it in their answer. Pa. R.C.P. 1032, 42 Pa. C.S.A.; Bird-

man v. Medley, 261 Pa. Super. 23, 395 A.2d 285 (1978). As our Supreme Court has explained, amendments to pleadings should be liberally granted, unless undue prejudice results, and the essence of undue prejudice "must stem from the fact that the new allegations are offered *late* rather than in the original pleading, and not from the fact that the opponent may lose his case on the merits if the pleading is allowed . . . [Citation omitted]." Bata v. Central Penn National Bank of Philadelphia, 448 Pa. 355, 380, 293 A.2d 343, 357 (1972), cert. den. 409 U.S. 1108 (1973), reh. den. 410 U.S. 960 (1973). Here defendants offered their amendment on the eve of trial and we find it was properly denied.

Fourthly, defendants argue that we erred in charging the jury that plaintiffs must prevail by a preponderance of the evidence rather than by the more demanding "clear and convincing evidence" standard, as defendants themselves had requested. Defendants are mistaken. See Rock v. Greenewald, 22 Pa. Super. 641 (1903), Straley v. Wahl, 97 Dauph. 308 (1975), Leeann Corp. v. Jones, 58 D.&C. 2d 703 (1972).

Finally, defendants contend that the verdict is against the weight of the evidence so as to require a new trial. We cannot agree. As stated by our Superior Court, "The primary function of a court faced with a boundary dispute is to ascertain and effectuate the intent of the parties at the time of the original subdivision." Roth v. Halberstadt, 258 Pa. Super. 401, 406, 392 A.2d 855, 857 (1978). Here plaintiffs have introduced the deed creating the disputed boundary which described the line going from east to west as first proceeding northwestward to a locust tree and then westwards. Two witnesses testified that the man who created that boundary,

Mr. Sweigart, walked along it with them at different times and pointed it out to them. These witnesses also testified that Mr. Sweigart erected a single wire fence along the boundary. Two surveyors testified that after careful and comprehensive work they placed the boundary on the same northwestwards-westwards line as described by Mr. Sweigart. Following this line, one surveyor found a tree with a single strand of wire in it, obviously the remnants of Mr. Sweigart's fence. Furthermore, buildings on the old Moore tract abutted the true property line between that tract and defendants' property.

For their part defendants testified that they had been shown the more southerly boundary line by Mr. Swavely when defendants purchased the property from him in 1951. However, Mr. Swavely had only purchased the property himself on the same day he sold most of it to the defendants. Defendants also introduced the testimony of a surveyor who had a determined that the more southerly boundary was the correct one. This surveyor, Mr. Betz, admitted that Mr. Turns had accompanied his crew during their survey and purported to indicate the locust tree in question along what Mr. Turns believed to be the correct, southerly boundary. Furthermore, Mr. Betz testified that he relied on the specific distances called for in the deeds and on a calculation of the resulting acreage supposedly comprising the plaintiffs' tract in settling on the more southerly boundary line, whereas plaintiffs' surveyors relied on monuments rather than acreage.

Defendants' survey evidence is less credible than plaintiffs' in several respects. First, defendants attach great importance to the fact that Mr. Betz's southerly survey line approximates the deed distances almost precisely, whereas plaintiffs' northerly line loses about 30 feet on the northwesterly leg.

This is a hollow argument; obviously this could be corrected by placing the northerly line even further north and giving defendants less resulting acreage. Defendants also argue that the Betz survey results in the correct acreage for plaintiffs' property. However, no actual acreage is mentioned in plaintiffs' deed or claim of title. Furthermore, though defendants' deed calls for "nine acres more or less", the southerly Betz line gives them 12 acres whereas the northerly line gives them almost 8 acres. Hence the southerly line results in a larger proportional error for both properties than the northerly line. Finally, our Supreme Court has said "Evidence of the acreage of land, especially where . . . the number of acres is followed by the words 'more or less,' has little weight as against specific boundaries and is in its nature an uncertain method of description and often a mere estimate." Dawson v. Coulter, 262 Pa. 566, 570, 106 A.187, 188 (1919).

Defendants' contention that the jury's verdict is against the evidence simply does not survive scrutiny of the entire record and we find no cause to grant their motion for a new trial.

Therefore, for the reasons given above, we enter the following

## ORDER

And now, October 27, 1982, defendants' post verdict motions are denied.