## Darrah *v.* Kadison, Appellant.

*Land law—Surveys—Vacant land—Patent—Trespass.*

1. The issuing of a patent for land which has already been surveyed and patented to another is not an official act, although made by a deputy surveyor, and gives nothing to the patentee.

*Adverse possession—Woodland—Evidence—Construction—Possession.*

2. To maintain an actual adverse possession to woodland as such it is necessary that the person entering take actual possession by residence or cultivation, of a part of the tract to which the woodland belonged. Actual possession may be taken by inclosing and cultivating, without residence or by residence without cultivation, under a bona fide claim, where there is a designation of the boundaries with the

ordinary use of the woodland.  If in an action of trespass for cutting timber no such possession is shown in the defendant, his claim of title by adverse possession cannot be sustained.

3. Where in an action of trespass for cutting timber no such possession is shown in the defendant, his claim of title by adverse possession cannot be sustained.

Argued May 7, 1913.   Appeal, No. 208, April T., 1913, by defendants, from judgment of C. P. Somerset Co., Dec. T., 1908, No. 174, on verdict for plaintiff in case of S. G. Darrah et al. v. Ellen L. Kadison et al. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.   Affirmed.

Trespass to recover damages for the alleged wrongful cutting of timber.  Before REED, P. J., specially presiding.  See report of former appeal, 51 Pa. Superior Ct. 133.

The court charged as follows:

This is an action of trespass brought by the plaintiffs to recover damages for cutting certain timber trees on a tract of land in Allegheny township, this county, the title and right of possession to which land they allege was in them at the time this timber was cut by the defendants.  The defendants deny that the plaintiffs had either title or possession of the land on which the timber was cut, and allege that one of the defendants, Ellen L. Kadison, had the title to it; and furthermore, that she was in actual, bona fide possession of it at the time this timber was cut.  It has been agreed here between the parties that if under the evidence and instructions of the court you find a verdict for the plaintiffs you shall assess their damages for the cutting of this timber by the defendants at the sum of $15.00.

You will observe that the controversy between these parties is not so much over the amount of money involved as it is as to the title or ownership of the property upon which the timber was cut.   The plaintiffs,

in support of their title, have offered evidence to show that the land on which this timber was cut was warranted and surveyed in the name of Nathan Hammond in 1794, and they have offered sundry deeds and conveyances to show that the title that was thus vested in Nathan Hammond became vested in the plaintiffs in this case, and was vested in them at the time this timber was cut. And it is admitted on the part of the defendants, that is the defendants admit that whatever title Nathan Hammond acquired to this land by virtue of this warrant and survey in 1794 became and was vested in these plaintiffs at the time this timber was cut. The defendants, in support of their title, have offered evidence to show that a man by the name of Deeter took out a warrant for land prior to the time the Nathan Hammond warrant was laid, and that land was surveyed and appropriated by Deeter—the Hammond land subsequently adjoining it on the north; that the Deeter title became vested in John Hoyle, and after he acquired title to the Deeter tract which contained forty-five acres, he took out a warrant in 1855 and 1856, and had a survey made of lands adjoining the Deeter tract which he owned at that time. It appears from the evidence in this case that he laid his warrant upon lands that had been previously surveyed and appropriated, namely, the Hammond tract, the Karcher tract, the Stoner tract, and perhaps some other tract; and the defendants have offered sundry deeds and conveyances to show that whatever title vested in John Hoyle by virtue of his warrant and survey became vested in the defendant, Ellen L. Kadison; and it is admitted by the plaintiffs here that whatever title John Hoyle did acquire by this warrant and survey of 1856, did subsequently become vested in the defendant, Ellen Kadison. [It appearing in this case. that the lands upon which John Hoyle laid his warrant had been previously surveyed and appropriated on prior warrants, his warrant, survey and patent were void;

no title would vest by virtue of them. There were no lands open to survey and appropriation where he laid his warrant, and consequently, by the laying of that warrant, and having them surveyed, and getting a patent, he did not acquire any title to the land covered by his warrant and survey; they were unauthorized and illegal acts and could not operate to affect a prior appropriation of that land; and John Hoyle not having acquired any title by virtue of his warrant and survey, of course could not convey title to any other person, and the persons who hold that title have no better title than John Hoyle himself had to the land,] [1] and therefore, we instruct you as a matter of law that the plaintiffs in this case had the better or superior legal or paper title to the land on which this timber was cut.

The defendants have also introduced testimony of a claim of title by adverse possession to the land covered by the John Hoyle warrant and survey within the lines of the Nathan Hammond tract; they have offered testimony to show that there were from three to five acres cleared along the west line of the Hammond survey at the time the John Hoyle warrant was laid. [As already stated, John Hoyle had become the owner of what has been called the Deeter tract, containing forty-five acres, and the Hammond tract adjoined the Deeter tract on the north; there was cleared on the Deeter, and also west of the west line of the Hammond on the Karcher tract, and as I have stated before, from three to five acres of the Hammond, east of the west line of the Hammond, and when John Hoyle laid his warrant in 1856 on the previously surveyed lands, including a part of the Hammond tract, he covered a part of the cleared land referred to, including the three to five acres on the Hammond, but there is no evidence that any of the persons under whom the defendant, Ellen Kadison, claims did this clearing on the Hammond and no such presumption could arise from the evidence. Presumably it was

cleared by Hammond, or some one claiming under him.] [2] The defendants, however, offered evidence tending to show that after Hoyle became the owner of the Deeter tract he took out the warrant referred to and thereafter used the land covered by it in connection with the Deeter tract, and that he and those claiming under him thereafter used the Deeter and the Hoyle as one tract or farm; [and that they occasionally farmed or cultivated this three to five acres of cleared land on the Hammond tract in connection with the other part of the farm, but it is to be observed that no title was acquired under the Hoyle warrant, survey and patent, and neither he nor those claiming under him could annex lands to which they had no title to land they did have title to and on which they reside, and then by acts on that part of the land to which they had title acquire title to land to which they had no title. Before they could acquire title to the land covered by the void Hoyle warrant and survey by adverse possession, it would have to be by what they did on that particular land; and just what was done on that land by Ellen Kadison and those under whom she claims is left in great confusion. The witnesses testified to what was done generally on the whole farm, that is on the Deeter forty-five acres and on the land covered by the Hoyle warrant of about 100 acres]. [3] I do not recall any evidence tending to show that Ellen Kadison, or those under whom she claimed, ever cultivated the cleared land on the Hammond tract and within the lines of the Hoyle survey prior to the time of the building of the South Penn Railroad Tunnel along in 1883 or 1884, or perhaps prior to twenty-five or thirty years ago; and the evidence is that this land has not been farmed by anyone for the last ten or fifteen years and is largely grown over with underbrush. There is some evidence that when this railroad tunnel was being constructed some buildings were erected on the Hammond tract for the temporary use of those working on this tunnel; and they were so erected by the permission or

under some arrangement with Ellen Kadison's predecessor in title.

It is not clear, however, that these buildings were in fact erected on the Hammond tract, but in any event they only remained for a short time and then were destroyed or removed many years ago. There is also evidence that some one of the predecessors in title of the defendant, Ellen Kadison, occasionally operated a limestone quarry on the Hammond for a year or two a number of years ago and then abandoned it; also that her predecessor in title occasionally cut posts and some logs on the Hammond, [but in my opinion the evidence of open, hostile and continuous adverse possession of any part of the Hammond land involving the locus in quo for a period of twenty-one years is wholly insufficient to carry that question to the jury, and therefore I instruct you that the defendant, Ellen Kadison, and those under whom she claims, did not acquire title to the land on which the defendants cut the timber in question by adverse possession]. [4]

[There has been some testimony offered suggesting the possibility that there was some vacant land along the west line of the Hammond tract on which the Hoyle warrant and survey may have taken effect, but there is nothing substantial in this suggestion; the testimony is not sufficient to raise any question about it for the consideration of the jury and you will give it no consideration in making up your verdict.] [5]

[Notwithstanding there is no evidence that the defendant, Ellen Kadison, or those under whom she claims had any title to the land upon which the defendants cut the timber, either by adverse possession or otherwise], [6] nevertheless, two questions arise for the consideration of the jury challenging the plaintiffs' right to maintain this action of trespass against them for the cutting of this timber. The plaintiffs were not in the actual possession of the land at the time the timber was cut and their title to the land would not give them

such possession of it as would entitle them to maintain
the action of trespass unless it was wild or unimproved
land. [The first question therefore is, was it unimproved
land?] [7] If it was, the plaintiffs, by virtue of their
legal title to it, would have such constructive possession
as would enable them to maintain an action against any-
one trespassing upon the same. [But if the defendant,
Ellen Kadison, was in the actual, bona fide possession
of the land at the time the timber was cut, this would
defeat the plaintiffs' right to maintain this action;
and this is the second question for the consideration
of the jury.] [8]

Verdict and judgment for plaintiffs for $15.00. De-
fendants appealed.

*Errors assigned* were (1–8) above instructions, quoting
them.

*Edmund E. Kiernan*, with him *Francis J. Kooser* and
*Ernest O. Kooser*, for appellants.—The question of ad-
verse possession should have been submitted to the jury:
Green v. Simpson, 49 Pa. Superior Ct. 334; Long v. Mast,
11 Pa. 189; Dikeman v. Parrish, 6 Pa. 210; Sailor v. Hert-
zogg, 10 Pa. 296.

The presumptions are in favor of defendants: Dike-
man v. Parrish, 6 Pa. 210; Sailor v. Hertzogg, 10 Pa.
296; Hole v. Rittenhouse, 25 Pa. 491; Farmers & Me-
chanics Bank v. Woods, 11 Pa. 99; Bear Valley Coal
Co. v. Dewart, 95 Pa. 72; Royer v. Benlow, 10 S. & R.
303; Baker v. Findley, 20 Pa. 163; Thompson v. Milford,
7 Watts, 442; Ament v. Wolf, 33 Pa. 331; Dougherty
v. Welshans, 233 Pa. 121; Keller v. Powell, 142 Pa.
96; McGowan v. Ahl, 53 Pa. 84.

*Chas. H. Ealy*, with him *Chas. F. Uhl, Jr.*, for ap-
pellees, cited: Hole v. Rittenhouse, 25 Pa. 491; Com.
v. Bierly, 37 Pa. Superior Ct. 496; Olewine v. Messmore,
128 Pa. 470; Irwin v. Patchen, 164 Pa. 51.

OPINION BY HENDERSON, J., December 8, 1913:

At the trial in the court below two questions were presented relating to the title of the property and two affecting the right of the plaintiffs to maintain an action of trespass. The plaintiffs claim through a warrant issued to Nathan Hammond in 1794. The defendants' paper title was based on a patent issued to John Hoyle in 1856, who was at that time the owner of the Deeter tract immediately south of that part of the Hammond tract which is the subject of litigation. But it was clearly shown that the Hoyle tract was laid on land long before warranted, title to which was outstanding in the heirs or grantees of the warrantees. There was, therefore, no land to which the Hoyle patent could give a title, at least so far as the Hammond tract is concerned, and it is not seriously pretended that the defendant acquired any title through the Hoyle patent, which could be successfully asserted in this action. There remained, therefore, only the second source of title—that the occupancy of the defendant and her predecessors in title had vested in her a valid title by adverse possession. The learned trial judge instructed the jury that no title passed to any of the land under the Hoyle patent, and that the evidence offered to support the title by adverse possession was insufficient for that purpose. This instruction was in accordance with numerous authorities. The issuing of the patent to Hoyle could not have the effect to take appropriated land from those to whom it belonged, and give it to the patentee. It was said in Hole v. Rittenhouse, 25 Pa. 491, that "The Commonwealth and her agents and vendees are bound to take notice of a valid survey marked upon the ground and returned into the land office. The parties who attempt to violate the right of property, by making a second and illegal survey, deserve no favorable consideration whatever. To call a survey thus made, an official act, because it was made by a deputy-surveyor, is an abuse of terms. There is

not the least spark of official authority for the second sale of the land." The defendant, although possessing the title of Hoyle to the Deeter tract, acquired nothing by virtue of the patent to Hoyle in 1856 for land long before warranted to other persons.

The evidence on the subject of adverse possession fell far short of that required to establish a good title. To make such title effective, it is necessary that there be an actual entry on the land of the rightful owner and an actual, visible possession taken of some part of it. Residence and possession with cultivation on adjoining land, with boundaries including the valid title of another, will not give actual possession of the latter, although accompanied by the ordinary use of it as woodland, in connection with the part resided upon or cultivated. To maintain an actual possession to woodland as such, it is necessary that the person entering take actual possession by residence or cultivation, of a part of the tract to which the woodland belongs: Hole v. Rittenhouse, 37 Pa. 116; Olewine v. Messmore, 128 Pa. 470. Actual possession may be taken by inclosing and cultivating, without residence or by residence without cultivation, under a bona fide claim where there is a designation of the boundaries with the ordinary use of the woodland. This possession accomplishes an ouster, and is entirely different from the occasional or temporary use of the land without an intention to permanently cultivate or reside thereon or use it in some other manner consistent with the condition of the property. There is no evidence of improvement and cultivation of that part of the Hammond tract covered by the Hoyle patent. Much evidence was introduced showing cultivation of the Hoyle farm, but this had no relation to the question in controversy. The buildings on that farm were on the Deeter tract, the title to which was in nowise involved. The cultivation on the other part of the farm was not on the Hammond tract, nor was the limestone quarry which was operated for a time.

There was a small clearing on the Hammond tract along a short stretch òf the west line, but it was not shown that any person connected with the Hoyle land had made the clearing or that it was made with the intention of occupying it as a part of that farm. The evidence in regard to the cutting of fence posts and other timber was not sufficient to show any sort of occupancy. The Hammond tract was unimproved land and the cutting of trees occasionally did not tend to show such occupancy as would make title. There was evidence that from three to five acres of the land had been inclosed by a wire fence in connection with the Hoyle farm, but this fence had not existed for a sufficient length of time to support the claim. The uncontradicted evidence shows that it had only been there for fifteen or eighteen years. If effect were to be given to such evidence of occupancy, an owner of unimproved land would need to maintain a patrol to report any trespass to avoid the liability that he might awake to the fact that such unlawful interferences had deprived him of his title.

On the question of the right of the plaintiffs to maintain the action the defendant contended that they had not such a possession as would enable them to prosecute an action of trespass, and that the defendant was in possession of the locus in quo, and, therefore, not liable in that action. The evidence on these features of the case was presented to the jury in a charge which we regard as clear and adequate. The plaintiffs contended that the land on which the timber was cut was unimproved and that they having the title were in constructive possession. When this case was here on a former appeal, 51 Pa. Superior Ct. 133, we held, in an opinion by our Brother MORRISON, that a title to unimproved land gives to the owner a constructive possession so that he can maintain an action of trespass, if there was not an actual adverse possession clearly made out on the part of the defendant, and many authorities are

there cited in support of that position. The action of the trial judge followed the law as there declared and is free from criticism. There was abundant evidence that plaintiffs' property was wild land. Whether the defendant was in a bona fide occupancy of any part of the land on which the trespass was committed was a question of fact which must have been submitted to the jury under the evidence. Whether the land included within the wire fence was intentionally so included as a part of the Hammond tract, and whether trees were cut east of that fence, the jury could best determine under the testimony. On both the questions of fact the decision was against the defendant, and that decision we must regard as conclusive upon the case as presented. The case was reversed at the former argument on the first three assignments of error, which relate to the actual possession of the land at the time of the trespass by Ellen L. Kadison, and the action of the court in giving binding instructions for the defendant. The question of the sufficiency of the evidence to establish the claim by adverse possession was not discussed and disposed of, but on consideration of the testimony now brought up, we think it evident that the trial judge was justified in the instruction on that subject. After a careful consideration of the argument of the learned counsel for the appellant, we are not persuaded that any error was committed on the trial of the case which requires a reversal.

Judgment affirmed.