545 A.2d 926

**Leon G. NILES, d/b/a L.G. Niles Lumber Company, Appellee,**

v.

**FALL CREEK HUNTING CLUB, INC., Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 17, 1988.

Filed July 15, 1988.

Raymond E. Ginn, Jr., Wellsboro, for appellant.

Robert F. Cox, Sr., Wellsboro, for appellee.

Before BROSKY, WIEAND, McEWEN, OLSZEWSKI, BECK, TAMILIA, KELLY, POPOVICH and JOHNSON, JJ.

WIEAND, Judge:

In this boundary dispute, Fall Creek Hunting Club, Inc. (Fall Creek) appeals from the judgment entered following a jury verdict in favor of Leon G. Niles, d/b/a L.G. Niles Lumber Co. (Niles). At issue are 113.4 acres of undeveloped timberland to which Niles claims ownership by virtue of adverse possession or by application of the doctrine of consentable lines. On appeal, Fall Creek argues that it should have been awarded judgment n.o.v. because the evidence was insufficient to permit a finding that Niles had acquired title either by adverse possession or by virtue of a line consented to by the parties. In the alternative, Fall Creek contends that it is entitled to a new trial because of errors committed by the trial court. Our review of the record compels the conclusion that the trial court correctly denied Fall Creek's motion for judgment n.o.v., but that a new trial is required.

By deed dated November 25, 1940, Fall Creek acquired title to a tract of approximately 1,560 acres of unimproved woodland in Liberty Township, Tioga County. The deed description defined the western boundary of the tract as "the line dividing the Townships of Liberty and Morris." To the west of this tract is land owned by Niles. This land had been acquired by Niles from Hammermill Paper Co. by deed dated November 21, 1958. Hammermill Paper, in turn, had purchased the land from Woodhouse Hunting Club (Woodhouse), which had acquired title from C.C. Slaght Lumber Corporation (Slaght).

In 1952, when Woodhouse purchased the land from Slaght,[1] uncertainty already existed as to the precise location of the line which divided the properties. Therefore, Woodhouse employed Thomas O. Bietsch to perform a survey. By letter dated April 1, 1952, Warren Spencer, Esquire, an attorney representing Woodhouse, invited the president of Fall Creek to assist Bietsch in determining the physical location of the western boundary of Fall Creek's land. The survey was performed on April 4, 1952. At least two members of Fall Creek and several members of Woodhouse were present when the survey was made. Bietsch located on the ground a line which he believed to be the Morris/Liberty Township line, and a line consistent therewith was blazed and painted in yellow. Bietsch was dead at the time of trial and could not testify. Over objection, Spencer was permitted to testify, and to introduce letters to show, that Bietsch had told him that representatives of Fall Creek had agreed to this line. Such an agreement was disputed by Fall Creek. Its representatives who had been present at the time of the survey testified that the surveyor had misplaced the line and that they had called the error to the surveyor's attention. In any event, the surveyor prepared a map for Woodhouse, and a deed was drafted in accordance therewith to complete Woodhouse's purchase from Slaght. With respect to the location of the common

1. Slaght had acquired title to the tract by a deed which contained a general description and not a description by metes and bounds.

boundary line, the deed recited that it was "verbally agreeable to the Fall Creek Hunting Club, the adjacent owners." Woodhouse placed a single strand of wire along the survey line and posted "no trespassing" signs.

For the next thirty-two years, posted signs were maintained along this line. During that period the blaze marks on the trees were observable and the strand of wire, although broken in places from time to time, could generally be found. There was also evidence of selective timber cutting up to the 1952 survey line by Niles. In addition, there was evidence that Fall Creek had posted its land on its side of the 1952 survey line, had detoured an existing logging road to avoid crossing the line, and had leased hunting rights up to the line.

In 1984, Fall Creek hired its own surveyor to make a survey of its land and to determine the precise location of the Morris/Liberty Township line. This survey concluded that the township line was seven hundred (700) feet west of the 1952 survey line fixed by Bietsch. The relocation of the line caused an increase in acreage to Fall Creek of 113.4 acres and a like decrease in the amount of land owned by Niles. Following completion of this new survey, Fall Creek crossed over the old line, blazed a new line, and posted "no trespassing" signs along the new line.

Niles commenced an action in ejectment and trespass against Fall Creek. He contended that he had acquired title by adverse possession, by a consentable line established after dispute and compromise, or by a consentable line which had come into existence by recognition and acquiescence. The jury which heard the case returned a general verdict in favor of Niles but declined to award damages. Post-trial motions were denied, and judgment was entered on the verdict. Fall Creek appealed.

The entry of judgment notwithstanding a jury verdict to the contrary is a drastic remedy. A court cannot lightly ignore the findings of a duly-selected jury. Thus, in considering a motion for judgment n.o.v., the court must view the evidence and all reasonable inferences that

arise from the evidence in a light most favorable to the verdict winner. See *Handfinger v. Philadelphia Gas Works*, 439 Pa. 130, 266 A.2d 769 (1970); *Northwest Savings Ass'n. v. Distler*, 354 Pa.Super. 187, 511 A.2d 824 (1986); *Tonkovic v. State Farm Mut. Automobile Ins. Co.*, 337 Pa.Super. 123, 486 A.2d 512 (1984). The court can enter judgment n.o.v. only if "no two reasonable persons could fail to agree that the verdict is improper." *Northwest Savings Ass'n. v. Distler, supra* 354 Pa.Super. at 191, 511 A.2d at 825. See also *Olson v. Dietz*, 347 Pa.Super. 1, 500 A.2d 125 (1985).

*Neal by Neal v. Lu*, 365 Pa.Super. 464, 478, 530 A.2d 103, 110 (1987). In deciding a motion for judgment n.o.v. we consider all evidence actually received, whether the trial court's rulings thereon were correct or incorrect. See: *Jones v. Treegoob*, 433 Pa. 225, 229, 249 A.2d 352, 354 (1969); *Rosche v. McCoy*, 397 Pa. 615, 619, 156 A.2d 307, 309 (1959); *Dorn v. Stanhope Steel, Inc.*, 368 Pa.Super. 557, 565–566, 534 A.2d 798, 802 (1987); *Northwest Savings Assoc. v. Distler*, 354 Pa.Super. 187, 191, 511 A.2d 824, 825–826 (1986); *Reichman v. Wallach*, 306 Pa.Super. 177, 185, 452 A.2d 501, 505 (1982). The erroneous receipt of evidence is corrected by granting a new trial.

█ One who asserts title by adverse possession must prove that he had actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for twenty-one years. *Conneaut Lake Park Inc. v. Klingensmith*, 362 Pa. 592, 594, 66 A.2d 828, 829 (1949); *Flickinger v. Huston*, 291 Pa.Super. 4, 7, 435 A.2d 190, 192 (1981). A sporadic use of land by one who does not have title to it will not operate to give him title, no matter how often repeated. *Hoover v. Jackson*, 362 Pa.Super. 532, 537, 524 A.2d 1367, 1369 (1987); *Bigham v. Wenschhof*, 295 Pa.Super. 146, 150, 441 A.2d 391, 393 (1982). Thus, occasional timbering and/or hunting, being necessarily sporadic, are themselves inadequate to establish title by adverse possession. See: *Norwich v. Beaver*, 326 Pa.Super. 456, 460–461, 474 A.2d 329, 331 (1984).

"To maintain an actual possession to woodland as such, it is necessary that the person entering take actual possession by residence or cultivation, of a part of the tract to which the woodland belongs. *Hole v. Rittenhouse*, 37 Pa. 116 [ (1860) ]; *Olewine v. Messmore*, 128 Pa. 470 [18 A. 495 (1889) ]. Actual possession may be taken by enclosing and cultivating, without residence or by residence without cultivation, under a bona fide claim where there is a designation of the boundaries with the ordinary use of the woodland. This possession accomplishes an ouster, and is entirely different from the occasional or temporary use of the land without an intention to permanently cultivate or reside thereon or use it in some other manner consistent with the condition of the property."

*Hoover v. Jackson, supra* 362 Pa.Super. at 539, 524 A.2d at 1370, quoting *Darrah v. Kadison,* 55 Pa.Super. 335, 343 (1913). See also: *Parks v. Pennsylvania R.R. Co.,* 301 Pa. 475, 481–482, 152 A. 682, 684 (1930); *Bigham v. Wenschhof, supra,* 295 Pa.Super. at 149–150, 441 A.2d at 393; *Flickinger v. Huston, supra* 291 Pa.Super. at 8, 435 A.2d at 192.

"Where an enclosure is relied on to establish adverse possession, it must be of a substantial character, so as to be a protection against outside interference in adapting the premises to some suitable use. An inclosure of the land by ... stretching around a twenty-five hundred acre tract one barbed wire nailed to trees and saplings and a few posts at about four feet from the ground, and under the wire two strands of telephone wire, is not sufficient": 2 C.J., section 15, page 62.

*Hoover v. Jackson, supra* 362 Pa.Super. at 540, 524 A.2d at 1371, quoting *Robin v. Brown,* 308 Pa. 123, 127, 162 A. 161, 162 (1932). See also: *Flickinger v. Huston, supra* 291 Pa.Super. at 10, 435 A.2d at 193; 2 C.J.S. Adverse Possession § 36 at 694–696 (1972); 3 Am.Jur.2d Adverse Possession § 31 (1986).

█ The evidence in the instant case was that the disputed land had been used only sporadically by Niles and his predecessors in title for the purposes of hunting and remov-

ing timber. The land had been partially enclosed by a single strand of wire which had broken and fallen to the ground in several places. This evidence was insufficient to show an inclosure of a substantial character. There was neither the establishment of a residence nor cultivation within designated boundaries. Therefore, the evidence failed to satisfy the essential requisites for proving that Niles had acquired title to the woodland by adverse possession.

The doctrine of consentable lines has emerged as a separate and distinct theory from that of traditional adverse possession. There are actually two ways in which one may prove a consentable line: by dispute and compromise, or by recognition and acquiescence. Both methods of proving a consentable line were reviewed in *Inn Le'Daerda, Inc. v. Davis*, 241 Pa.Super. 150, 360 A.2d 209 (1976). First, the court explained, one may prove a consentable line by evidence of:

> (1) a dispute with regard to the location of a common boundary line, (2) the establishment of a line in compromise of the dispute, and (3) "the consent of both parties to that line and the giving up of their respective claims which are inconsistent therewith." *Newton v. Smith*, 40 Pa.Super. 615, 616 (1909). "[W]here such a line has been clearly established and the parties on each side take possession or surrender possession already held up to that line, it becomes binding, under the application of the doctrine of estoppel." *Id.*

Although the parties may be bound if, merely having doubt as to the correct boundary location, they enter into a compromise, a "consentable line" is not created "if the parties, from misapprehension, adjust their fences, and exercise acts of ownership, in conformity with a line which turns out not to be the true boundary; or permission be ignorantly given to place a fence on the land of the party...." *Perkins v. Gay*, 3 S. & R. 327, 331 (1817).

> The establishment of this kind of boundary is always a matter of compromise, in which each party supposes he

gives up for the sake of peace something to which in strict justice he is entitled.... *Id.* at 332.

*Id.* 241 Pa.Super. at 162–163, 360 A.2d at 215.

Proof of a consentable line by recognition and acquiescence was explained by the same Court as follows:

Our courts have long recognized, however, that a boundary line may be proved by a long-standing fence without proof of a dispute and its settlement by a compromise. In *Dimura v. Williams,* [446 Pa. 316, 286 A.2d 370 (1972)], the court noted:

It cannot be disputed that occupation up to a fence on each side by a party or two parties for more than twenty-one years, each party claiming the land on his side as his own, gives to each an incontestable right up to the fence, and equally whether the fence is precisely on the right line or not. *Id.* 446 Pa. at 319, 286 A.2d at 371.

In such a situation the parties need not have specifically consented to the location of the line. *Dimura v. Williams, supra* [446 Pa.] at 319, 286 A.2d at 371. It must nevertheless appear that for the requisite twenty-one years a line was recognized and acquiesced in as a boundary by adjoining landowners. *See Miles v. Pennsylvania Coal Co.,* 245 Pa. 94, 91 A. 211 (1914); *Reiter v. McJunkin,* 173 Pa. 82, 33 A. 1012 (1896).

*Id.* 241 Pa.Super. at 163, 360 A.2d at 215–216. See also: *Norwich v. Beaver, supra; Burns v. Mitchell,* 252 Pa.Super. 257, 381 A.2d 487 (1977).

■ In the instant case, there was evidence that in 1952 Fall Creek had been informed that Woodhouse was uncertain where the common boundary existed on the ground, that a survey was being made, and that Fall Creek's opinion and participation were welcome. The evidence showed further that representatives of Woodhouse and representatives of Fall Creek were present when the survey was made. An attorney who then represented Woodhouse testified that he had gone to the site and had been told by the surveyor that the parties had agreed where the line should be located.

Following this survey, a line had been blazed and painted, and the surveyor had prepared a description of the property for his client which described the common boundary as the township line, "the location of which is verbally agreeable to the adjacent owners." This description was incorporated into the deed from Slaght to Woodhouse.[2] Woodhouse then caused a wire to be strung along the boundary line, and both parties posted signs in conformance with the 1952 survey line. In the years that followed, according to Niles's evidence, both parties observed this line as a boundary in the use of their respective tracts.

This evidence was sufficient, if believed by the jury, to support a finding that the 1952 survey line had become a binding, consentable line, whether by compromise of an uncertain boundary line or by recognition and acquiescence. A jury could have found that the 1952 survey line had been laid in settlement of or to avoid a dispute regarding the doubtful location of the boundary, and that both parties had agreed to abide by the survey line and give up any claims of title that were inconsistent with the line. The jury could also have found that the line had been recognized and acquiesced in by both parties for a period well over twenty-one years, during which Fall Creek, on the one hand, and Woodhouse and its successors, on the other, had maintained the line and had used their respective lands as though the 1952 survey line had been the true property line. In order to prove the line by recognition and acquiescence it was not essential to show an express agreement to recognize the line. *Dimura v. Williams, supra* 446 Pa. at 319, 286 A.2d at 371. Under either consentable line theory, moreover, it was not essential that the fence line be substantial. *Id.* 446 Pa. at 318, 286 A.2d at 371; *Inn Le'Daerda v. Davis, supra* 241 Pa.Super. at 163 n. 7, 360 A.2d at 215 n. 7.

Where a case is submitted to a jury on several theories which have been pleaded in the alternative, the verdict can be upheld if the evidence is sufficient to prove a valid cause under any of those theories. See: 5A C.J.S. Appeal &

2. Fall Creek was not a party to this deed.

Error § 1647, n. 56. Because the evidence in this case was sufficient to sustain Niles's title by virtue of a consentable line, the trial court properly denied Fall Creek's motion for judgment n.o.v.

■ The record, however, does not permit a reviewing court to determine on which theory the jury found that Niles had acquired title up to the 1952 survey line. Therefore, we must examine the trial court's jury instructions with respect to all possible theories on which the jury was permitted to find in favor of Niles. "If the jury charge [was] fundamentally erroneous or ha[d] a tendency to mislead or confuse ... a new trial will be required so long as that portion of the charge in question *might have been responsible* for the verdict." *Hoffman v. Memorial Osteopathic Hospital*, 342 Pa.Super. 375, 382, 492 A.2d 1382, 1386 (1985) (emphasis added), citing *Jones v. Montefiore Hospital*, 494 Pa. 410, 431 A.2d 920 (1981) and *Vaughn v. Philadelphia Transportation Co.*, 417 Pa. 464, 209 A.2d 279 (1965).

With respect to Niles's claim of title by adverse possession, the trial court not only refused to take this issue from the jury, but it also refused several instructions requested by Fall Creek to the effect that adverse possession of woodland cannot be established by a mere showing of occasional or sporadic use of the land such as for hunting or partial timbering.[3] These requested instructions contained

3. Specifically, the trial court rejected appellant's request that the jury be told:

> Where woodland is concerned, adverse possession is not established by the mere showing that there was an occasional user by plaintiff of the land for hunting or foraging for wood or partial timbering.
> A sporadic use of land by one without title to it, will not operate to give him a title, no matter how often repeated. Nothing short of an actual possession, permanently continued will take away from the owner the possession which the law attaches to the legal title: temporary acts on the land, without an intention to seat and occupy it for residence and cultivation or other permanent use consistent with the nature of the property, are not the actual possession required.

correct statements of the law.  See: *Hoover v. Jackson, supra; Darrah v. Kadison, supra.*  See also: *Parks v. Pennsylvania R.R. Co., supra* 301 Pa. at 481, 152 A. at 684; *Bigham v. Wenschoff, supra; Flickinger v. Huston, supra* 291 Pa.Super. at 8, 435 A.2d at 192.  The trial court also refused a requested instruction by Fall Creek that to prove adverse possession of woodland by enclosure the claimant (Niles) was required to show that the land had been substantially fenced, and another instruction that a fence "which has the appearance of being neglected and abandoned and which is not even complete, falls short of supporting an aggressive assertion of ownership of the land within its lines."  These, too, were correct statements of the law.  See: *Robin v. Brown, supra* 308 Pa. at 130, 162 A. at 163.  Instead, the trial court instructed the jury, in pertinent part, as follows:

> The plaintiff also claims that the boundary line is located where he contends it is by' the law of adverse possession.... An adverse possessor must intend to hold the land for himself.  And that contention, it must be manifested by his acts.  A particular act or series of acts.  It is necessary to demonstrate an intention to claim ownership.  And such a purpose is sufficiently shown where one goes upon the land and uses it openly and notoriously as owners of similar lands are used in their property.  To the exclusion of the true owners or other owners.  A possesion [sic] which is of such character as owners of similar land, in this vicinity, usually maintain regarding their property is sufficient upon which to find title.

This instruction was inadequate.  In the first place, the evidence of adverse possession was insufficient, as we have already observed, to warrant submission to the jury.  Therefore, the jury should not have been told it could find that Niles had acquired title in this manner.  Moreover, the

The mere fact of parties going in now and then and cutting some timber or cutting some ties, or some logs, does not constitute adverse possession.

Sporadic cutting of firewood and timber will not satisfy a claim of adverse possession.

instructions given to the jury failed to convey the difficulty inherent in establishing title by adverse possession to unimproved woodland. To establish title by adverse possession of woodland it is essential that the adverse possessor take actual possession by enclosing and cultivating without residence or by residence without cultivation within designated boundaries. *Hoover v. Jackson, supra* 362 Pa.Super. at 539, 524 A.2d at 1370. The trial court's instructions also failed to instruct the jury, as was specifically requested, that a "sporadic use of land, by one without title to it, will not operate to give him title, no matter how often repeated." *Parks v. Pennsylvania R.R. Co., supra; Hoover v. Jackson, supra* 362 Pa.Super. at 537, 524 A.2d at 1369; *Inn Le'Daerda, Inc. v. Davis, supra* 241 Pa.Super. at 159, 360 A.2d at 213.

Thus, the instructions requested by Fall Creek were not adequately covered by the trial court's jury instructions. Fall Creek was entitled to have the jury instructed as it requested, for the points which it submitted were correct statements of the law. When the trial court refused the requested instructions and otherwise failed to include the subject matter thereof in its charge to the jury, the trial court erred. The trial court not only submitted to the jury a claim of adverse possession which had been insufficiently proved, but it inadequately instructed the jury on the evidence necessary to support such a claim. This requires a new trial. It cannot be determined from this record that the jury's verdict was not based upon the trial court's inadequate and misleading instructions regarding the acquisition of title by adverse possession.[4]

4. Appellant has also taken issue with the trial court's refusal to adopt additional points for charge which appellant requested. Rejected by the trial court were instructions that:

It is a serious matter indeed to take away another's property and that is why the law imposes such strict requirements of proof on one who claims by adverse possession.

"Tacking" to possession of predecessor's intitle [sic] is permitted for adverse possession purposes only where the possessions are continuous; but each predecessor must have claimed title to the property in dispute and, in transferring to its successor, must have purported to include it in the transfer.

■ The trial court also erred when it allowed Warren Spencer to testify, over objection, that he had been told by the surveyor that the representatives of Fall Creek had agreed to the 1952 survey line. This testimony was hearsay and should have been excluded.

Hearsay is a statement made by an out-of-court declarant which is offered to prove the truth of the matter asserted. McCormick on Evidence § 246 (3d ed. 1984). Although there are exceptions, the general rule in this Commonwealth is that hearsay evidence is inadmissible. One of the exceptions to the hearsay exclusionary rule pertains to declarations by a surveyor. This exception holds that declarations of a deceased surveyor regarding a line surveyed are admissible in boundary disputes. *Laidley v. Rowe*, 275 Pa. 389, 394, 119 A. 474, 477 (1923); *Collins v. Clough*, 222 Pa. 472, 484, 71 A. 1077, 1080 (1909); *Kramer v. Goodlander (No. 2)*, 98 Pa. 366, 369 (1881); 14 P.L.E. Evidence § 145. See also: *Hallman v. Turns*, 334 Pa.Super. 184, 194, 482 A.2d 1284, 1290 (1984). Authenticated field notes of a deceased surveyor are also admissible as declarations contemporaneous with the work done on the ground. See: *Collins v. Clough, supra* 22 Pa. at 487, 71 A. at 1081. However, the deceased surveyor exception applies only to observations and notes made by the surveyor which relate to his surveying duties. As the Supreme Court has observed, the declarant must have been on the land at the time the declaration

In order to establish a consentable line, the plaintiff has the burden of proving that the defendant expressly agreed to the establishment of a boundary line in compromise of a dispute as to its location.

The trial court's refusal of these points was not error. The strictness of proof required was adequately conveyed by the language used by the court. "Tacking" was not an issue, because appellee itself had possessed the disputed land for more than twenty-one years. Finally, appellant's requested instruction on the need for an express agreement was misleading because one may prove a consentable line by recognition and acquiescence without an express agreement.

Similarly, although the court labelled the twenty-one year time requirement for adverse possession as a "twenty-one-year statute of limitations," the charge as a whole made it clear that the burden was upon Niles to prove that all of the requisite elements of adverse possession continued for a period of twenty-one years in order for him to prevail.

was made and engaged at the time in pointing out the boundaries of the land. *Id.* 222 Pa. at 484, 71 A. at 1080. "[T]he rule as to the admission of such evidence is confined strictly to the particular thing it was the duty of the person to do: and unlike a statement against interest, does not extend to collateral matters, however closely connected with that being." *Id.* 222 Pa. at 485, 71 A. at 1081 (quoting Best on Evidence, sec. 501).

Under this exception, Bietsch's statements and notes about observations that were a part of his survey were admissible. His statement that representatives of Fall Creek had consented to and agreed with his survey, however, pertained to a matter which was not strictly a part of his duties as surveyor. His statement to Spencer, the witness, was not admissible under any other exception to the hearsay rule. It was neither an excited utterance nor a present sense impression. The evidence does not show that it was a contemporaneous verbalization of present observations occurring in the presence of the declarant, and there was no evidence regarding the time lapse between the surveyor's observations and his statement to Spencer. Thus, it cannot be said that the statement was sufficiently contemporaneous with the perception to preclude reflection. For similar reasons, the letter dated April 2, 1952, which the surveyor had written to Spencer, and a handwritten metes and bounds survey description which he had prepared for his client, both of which stated that the parties had consented to the line which he had surveyed, were inadmissible. They should not have been received as evidence of Fall Creek's consent to the line which the surveyor established.

This evidence, improperly received, was not harmless. If believed, it substantiated appellee's claim of a consentable line. It tended to establish the agreement which was necessary to a showing of title by dispute and compromise. Moreover, although proof of an express agreement is not essential to proof of a consentable line by acquiescence and recognition, this evidence helped to bolster that claim as

well. Thus, it cannot be said with certainty that the hearsay evidence did not contribute to the jury's verdict.[5]

■  Finally, Fall Creek argues that the trial court erred when it rejected evidence to show the location of the Liberty/Morris Township line.  The trial court refused to allow this evidence on grounds that it was irrelevant to the issues being tried.  Under the unique facts of this case, we conclude that the trial court's evidentiary ruling was not an abuse of discretion.  Niles could succeed in this action by showing title by adverse possession or by consentable line. Under either theory he could prevail regardless of where the township line was physically located on the land.  Although Fall Creek would have been entitled to show the location of the line designated by the description in its deed in order to defend against an assertion by Niles that Niles held record title to the land, no such claim had been made. A fair reading of the complaint and the proof adduced at trial disclose that Niles did not contend that he had record title to the disputed land;  he asserted only that he had acquired title by adverse possession or a consentable line. Therefore, the trial court did not err when it excluded evidence of the "true" location of the Morris/Liberty Township line on grounds that its actual location was irrelevant. See, e.g.: *Dimura v. Williams, supra* (one can prove a consentable line "whether the fence is precisely on the right

---

5.  No objection was made in post-trial motions to the admission of a deed from Woodhouse to Niles, which similarly contained a notation that Fall Creek had agreed to the location of the boundary in dispute. See Plaintiff's Exhibit No. 9.  Since any objection has, therefore, been waived, we do not find it necessary to decide whether the deed recital would have been admissible under the "ancient documents" exception to the hearsay rule.  See generally: *Brock v. Atlantic Refining Co.,* 273 Pa. 76, 80, 116 A. 552, 553 (1922); *Dougherty v. Welshans,* 233 Pa. 121, 133 (1911).  See also: *Hostetter v. Commonwealth,* 367 Pa. 603, 606, 80 A.2d 719, 720 (1951).  Even if the deed recital were admissible, however, we would be hesitant to hold that this fact alone rendered harmless the erroneous admission of the remaining oral and written hearsay evidence.  Whether or not there was an agreement to recognize the 1952 survey line as the boundary for the two tracts was critical to the issue of title in this case, and the improper hearsay evidence, because it added credibility to Niles's claim, cannot be deemed harmless.

line or not"); *Inn Le'Daerda, Inc. v. Davis, supra* (same). For the same reason, the court did not err when it refused Fall Creek's points for charge regarding the location of the township line.

This is a difficult case. Whether Fall Creek's record title to the disputed land must yield to Niles because of a boundary fixed by consentable line is a close question. Because the jury's verdict may have been influenced by misleading instructions on adverse possession and erroneous evidentiary rulings, a new trial is required.

Reversed and remanded for a new trial. Jurisdiction is not retained.

OLSZEWSKI, J., files a dissenting statement.

OLSZEWSKI, Judge, dissenting:

I respectfully dissent. Based upon the trial record, I would grant judgment n.o.v. in favor of the appellant on both theories advanced by the appellee.