J-A03037-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| JACK CASTALDO AND GERALDINE CASTALDO, HIS WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellees | : | |
| | : | |
| v. | : | |
| | : | |
| BRENDAN DOHN AND ELIZABETH CLAUDIO DOHN, HIS WIFE | : | |
| | : | |
| Appellants | : | No. 2197 EDA 2022 |

Appeal from the Judgment Entered December 21, 2022
In the Court of Common Pleas of Monroe County
Civil Division at No(s): 007904-CV-2017

BEFORE: KING, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.: **FILED AUGUST 16, 2023**

Appellants, Brendan Dohn and Elizabeth Claudio Dohn, husband and wife,[1] appeal from the judgment entered in the Monroe County Court of Common Pleas, in favor of Appellees, Jack Castaldo and Geraldine Castaldo, husband and wife, in this quiet title action. We reverse and remand.

The relevant facts and procedural history of this case are as follows. Mr. Castaldo acquired a 0.402 acre tract of land at 3113 Sheriff Lane, East Stroudsburg, Pennsylvania in June 1995. Appellants purchased the adjacent

_____

[*] Former Justice specially assigned to the Superior Court.

[1] We refer to Brendan and Elizabeth Dohn collectively as Appellants or individually as Mr. Dohn and Mrs. Dohn. Similarly, we refer to Jack and Geraldine Castaldo collectively as Appellees or individually as Mr. Castaldo and Mrs. Castaldo.

0.501 acre tract of land at 3107 Sheriff Lane in September 2013. The parties' properties are rectangular in shape and share a 190.39-foot boundary (hereinafter referred to as "the deeded line"). Robert and Dorothy McGowan previously owned Appellants' property from May 1987 until May 24, 2011, when the McGowans lost the property to foreclosure. Appellants purchased the home from Federal Home Loan Mortgage Corporation on September 26, 2013.

Prior to Appellants' purchase of the land, the McGowans had an agreement with Appellees concerning the location of the shared boundary line between their properties. This line, which we refer to as the "spruce tree line" for clarity, ran in a straight direction between three large spruce trees planted between the two properties. One of the spruce trees was located at the actual pin marking the boundary. However, the spruce tree line did not follow the actual metes and bounds of the deeded line, but rather encroached upon the lot formerly owned by the McGowans/now owned by Appellants. The trial court found that the encroachment was unknown to the McGowans and Appellees, and both consented to the spruce tree line as the boundary between the two properties.

In 1995, Appellees planted ornamental shrubbery beside their driveway and along the front portion of the spruce tree line. In 2000, Appellees built a fence along the back portion of the property which extended from the rear of the property to the ornamental shrubbery. The fence, which aligns with the

side of the shrub row closer to Appellees' property, is located approximately three feet closer to Appellees' property than the spruce tree line, and establishes a second line between the two properties, which we refer to as "the fence line."

The trial court found that the McGowans maintained the property up to the spruce tree line from 1995 to 2011. The court explained:

> [Appellants] moved into their property in 2013. They were not told of the location of the [spruce tree line] with [Appellees]. They believed the fence was on their property and was their fence. They also did maintenance on their property up to the fence. Mr. Dohn was away from the property on military duty from October 2013 through September 2014.
>
> Mrs. Castaldo came home in 2014 and found Mrs. Dohn and her brother were cutting the limbs of the middle spruce tree…near [Appellants'] playground set. Mrs. Castaldo told them the tree was a boundary marker right on the property line. Mrs. Dohn said she wanted to take the tree down because of dropping needles. After some discussion Mrs. Castaldo agreed that the tree could be cut down, but told Mrs. Dohn not to cut the two spruces on each end of the [spruce tree] line….

(Trial Court Opinion, 12/17/21, at 6).

In 2015, Mr. Dohn was raking the area of land between the fence line and the spruce tree line. Mrs. Castaldo approached him and asked him not to rake that area because Appellees' electric dog barrier was buried there. Mrs. Castaldo told Mr. Dohn that Appellees owned the property next to the fence. Later that year, Mr. Dohn was weed whacking in the area when Mrs. Castaldo again approached him and asked him not to weed whack there because it was

Appellees' property. Mrs. Castaldo then planted willow trees along Appellants' side of the fence in the strip between the fence line and the spruce tree line. Later in 2015, Mrs. Dohn's father mowed the area between the fence line and the spruce tree line and was asked not to do so by Mrs. Castaldo. At Mr. Dohn's request, Mrs. Castaldo produced a survey map of Appellees' lot (Defense Exhibit 1), which shows the actual 190.39 foot deeded line. Shortly thereafter, Appellees' attorney sent Appellants a "cease and desist" letter and Appellants then stopped maintaining the property up to the fence and shrubs.

On July 24, 2017, Appellants obtained a survey of their property by Frank J. Smooth, Jr., Inc. Professional Land Surveyors, which showed the deeded line. This line did not align with the spruce tree line, in fact the northern pin was located in Appellees' macadam driveway approximately six feet north of the trunk of the northernmost spruce tree. On July 27, 2017, Appellants cut down the shrubbery planted between the fence and Sheriff Lane on their side of the deeded line with the intent to erect their own fence on the actual surveyed deeded line. Appellees sent a "cease and desist" letter.

Appellees commenced this action on October 17, 2017, to quiet title, and sought damages for trespass related to Appellants' actions in cutting down shrubs which Appellees had planted in the contested area. In the complaint, Appellees asserted that they are owners of the disputed property by the doctrine of consentable lines by acquiescence, having possessed and occupied up to the spruce tree line continuously since 1995. Appellees claimed that

Appellants recognized and acquiesced to the boundary line being at the spruce tree line until July 2017.

Appellants filed a motion for summary judgment on October 15, 2019, which the trial court denied without prejudice in February 2020, finding that discovery had not yet been completed. Following the completion of discovery, Appellants filed a second motion for summary judgment in June 2021. The trial court denied this motion in August 2021, finding that a question of material fact existed as to whether the parties claimed title up to the spruce tree line and occupied their side for the requisite 21-year period. (***See*** Order, 8/23/21). The case proceeded to a bench trial on November 18, 2021. The trial court took the case under advisement and, on December 17, 2021, rendered its verdict in favor of Appellees. The court awarded no damages for trespass.

The trial court concluded that Appellees had proven that there was recognition and acquiescence of the spruce tree boundary line by the McGowans and Appellees from 1995 through 2013. The trial court further decided that Appellants had acquiesced to the spruce tree line boundary from 2013 until July 2017 by failing to take affirmative steps to protect their claim to the three-foot strip beyond the fence after Mrs. Castaldo repeatedly told Appellants that the strip was Appellees' property. The trial court therefore ordered that Appellees "own the land on their side of the line of three spruce trees (now marked by one on each end and a stump in the middle)." (***See***

Order, 12/17/21, at 2). The court retained jurisdiction to approve a metes and bounds survey of this line. Appellants did not file a post-trial motion but filed a notice of appeal on January 14, 2022.

On March 3, 2022, this Court issued a rule to show cause why the appeal should not be dismissed for failure to preserve any issues for appellate review in a post-trial motion. In response, Appellants conceded that they did not file post-trial motions, but they claimed that the prothonotary had failed to docket Rule 236 notice of the December 17, 2021 decision. *See* Pa.R.C.P. 236.

Subsequently, this Court quashed Appellants' appeal and remanded for proper docketing of the December 17, 2021 ruling. Upon remand, the trial court docketed proper notice of entry of the court's order in favor of Appellees on April 29, 2022. Appellants filed a timely motion for post-trial relief on May 9, 2022. On July 19, 2022, the trial court denied Appellants' motion. Appellants filed a premature notice of appeal on August 18, 2022, prior to entry of judgment on the verdict.[2]

On August 22, 2022, the trial court ordered Appellants to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). On September 23, 2022, the trial court issued an opinion stating that Appellants had failed to comply with the court's order, and therefore, the court was

_____

[2] This Court subsequently directed Appellants to *praecipe* for entry of final judgment, which was entered on the docket on December 21, 2022. We will relate Appellants' premature notice of appeal forward to the date judgment was entered. *See* Pa.R.A.P. 905(a)(5).

unable to issue a Rule 1925(a) opinion. On October 17, 2022, Appellants filed a motion for leave to file their concise statement *nunc pro tunc*, explaining that they had not received the court's concise statement order. On November 2, 2022, after a hearing on Appellants' motion, the court granted Appellants permission to file their concise statement *nunc pro tunc*. Appellants filed their Rule 1925(b) statement on November 4, 2022, and the court issued a supplemental Rule 1925(a) opinion on December 12, 2022.

Appellants raise the following issues on appeal:

> 1. Did the trial court err and reach a conclusion in the absence of supporting evidence when it concluded that the McGowans and the Benningers, predecessors in interest to the parties in the instant lawsuit, had reached an agreement on their boundary line marked by three spruce trees planted along the line?
>
> 2. Did the court err and reach a conclusion in the absence of supporting evidence when it concluded that [Appellants] had recognized or acquiesced in the boundary claimed by [Appellees]?
>
> 3. Did the trial court err when it permitted [Appellees] to attempt to quiet title to a parcel of land that was not identified by a sufficient legal description?
>
> 4. Did the trial court err and reach a conclusion without supporting evidence in finding a recognition and acquiescence of the boundary line by the McGowans and [Appellees]?
>
> 5. Did [Appellants] act too late in removing the trees only after obtaining an accurate survey of the boundary line?
>
> 6. Did the trial court err in finding that [Appellants] stopped maintaining the property up to the fence and shrubs in 2015?

7. Did the trial court err in denying [Appellants'] two motions for summary judgment[?]

(Appellants' Brief at 4-5).

"When reviewing a trial court's decision regarding an action to quiet title, we are limited to determining whether the findings of fact that led to the trial court's conclusions of law are supported by competent evidence. Ordinarily, an appellate court will not reverse a determination of the trial court in a quiet title action absent an error of law or capricious disregard of the evidence." *Moore v. Duran*, 687 A.2d 822, 827 (Pa.Super. 1996), *appeal denied*, 549 Pa. 703, 700 A.2d 442 (1997) (citations and internal quotation marks omitted).

In their first, second, fourth and seventh issues (which Appellants combine in their brief), Appellants argue that the trial court erred in finding that Appellees proved a consentable boundary by recognition and acquiescence. First, they argue that Appellees failed to produce any evidence of a consentable boundary between the McGowans and the Benningers (Appellees' predecessor in title); therefore, the earliest the 21-year period can start is in 1995 when Appellees bought their property. Appellants do not contest the trial court's finding that Appellees and the McGowans each occupied the land up to the spruce-tree boundary as their own until 2013, when Appellants moved in.

However, as this was at most 18 years, Appellants contend that Appellees were still required to show three more years of occupation to meet

the 21-year requirement. Appellants insist that the record before the trial court does not support its finding that Appellees continued to occupy the land up to the spruce tree line (including the three-foot strip beyond the fence), and that Appellants occupied their land only up to the spruce tree line (and did not occupy the three-foot strip on their side of the fence). Specifically, Appellants claim that despite being confronted by Appellees on several occasions, they continued to treat the disputed three-foot strip of land on their side of the fence as their own by performing lawn maintenance and removing a tree from the area. Appellants conclude that the court's judgment in favor of Appellees was improper, and this Court must grant relief. We agree that relief is due.

"At the outset, we note that the factual findings of a trial court sitting without a jury carry the same weight as a jury verdict, and we will not disturb those findings on appeal absent an error of law or abuse of discretion." **Brennan v. Manchester Crossings, Inc.**, 708 A.2d 815, 817 (Pa.Super. 1998), *appeal denied*, 556 Pa. 683, 727 A.2d 1115 (1998) (citations and internal quotation marks omitted). "If a decision is based on 'findings which are without factual support in the record,' however, the reviewing court will not hesitate to reverse." **Lilly v. Markvan**, 563 Pa. 553, 557, 763 A.2d 370, 372 (2000) (quoting **Bortz v. Noon**, 556 Pa. 489, 729 A.2d 555, 559 (1999)).

"The doctrine of consentable lines has emerged as a separate and distinct theory from that of traditional adverse possession. There are actually

two ways in which one may prove a consentable line: by dispute and compromise, or by recognition and acquiescence."[3]  **Niles v. Fall Creek Hunting Club, Inc.**, 545 A.2d 926, 930 (Pa.Super. 1988) (*en banc*).  "The establishment of a boundary line by acquiescence for the statutory period of twenty-one years has long been recognized in Pennsylvania."  **Zeglin v. Gahagen**, 571 Pa. 321, 325-26, 812 A.2d 558, 561 (2002) (citations and footnote omitted).  To successfully prove a consentable line by acquiescence, "[t]wo elements are prerequisites: 1) each party must have claimed and occupied the land on his side of the line as his own; and 2) such occupation must have continued for the statutory period of twenty-one years."  **Id.** at 326, 812 A.2d at 561.  "'Acquiescence,' in the context of a dispute over real property, 'denotes passive conduct on the part of the lawful owner consisting of failure on his part to assert his paramount rights or interests against the hostile claims of the adverse user.'"  **Moore v. Moore**, 921 A.2d 1, 5 (Pa.Super. 2007), *appeal denied*, 594 Pa. 698, 934 A.2d 1278 (2007) (quoting **Zeglin, supra** at 327 n.5, 812 A.2d at 562 n.5).

Instantly, the trial court explained that it made no finding concerning any agreement between the McGowans and the Benningers; thus, the court commenced the 21-year period when Appellees bought their property in 1995. The trial court then explained:

---

[3] Here, the trial court found that Appellees proved a consentable line by recognition and acquiescence.

[Appellees] treated the three large trees as marking the boundary line between them and [the McGowans] when they moved in. This was accepted by the McGowans. [Appellees] planted 17 bushes along the property line they claimed that ran along their driveway and the McGowan property. In 2000, they built a fence along the rest of what is now the disputed line, which fence remains in place. (N.T. Trial, 11/18/21, at 8-9). After [Appellants] moved in [Appellees] continued to maintain the property up to the willow trees they had planted along the claimed line on [Appellants'] side of the fence and up to the bushes along their driveway. (*Id.* at 32, 41). When [Appellants] began cutting limbs from the spruce tree on the middle of the boundary, [Mrs.] Castaldo challenged them and told them it was a boundary tree. She agreed to let them remove it. They "pretty much" asked her permission to remove it. (*Id.* at 40, 50). In 2015, [Mrs.] Dohn was raking close to the fence. [Mrs.] Castaldo had buried an electric dog fence in that three foot area, and she was concerned that [Appellants'] raking would damage the electric line. She told [Mrs.] Dohn that she was raking on [Appellees'] land. An argument ensued and [Appellants] asked to see a survey. [Mrs.] Castaldo immediately went and got her lot survey and showed it to [Appellants], which ended the argument. (*Id.* at 46-47). [Appellants] stayed away from the disputed area until they obtained their own survey. (*Id.* at 49, 70)….

\* \* \*

[The trial court] found that [Appellees] defended their claim to the property line by building a fence, planting shrubbery and installing an electric dog fence. [Mrs.] Castaldo was vigilant in protecting her claim to the boundary line as she had known it since [Appellees'] property was purchased in 1995. [Appellants] waited to get a survey before taking unilateral action to remove [Appellees'] shrubbery.

(Trial Court Opinion, 12/12/22, at 2-4) (record citation formatting provided).

Upon review, we cannot agree that the record supports the trial court's

findings that Appellants and Appellees continued to claim and occupy the land

on their respective sides of the spruce tree line as their own for the remainder of the 21-year period. **See Zeglin, supra**. Here, Appellees have attempted to prove a consentable boundary based on acquiescence along the spruce tree line. However, the record reflects that they did not build the fence along the spruce tree line, but rather built it approximately three feet closer to their own property. This established a second apparent boundary between the two properties, which was in place in 2013. This fence was located closer to the actual deeded line than it was to the spruce tree line. Appellants testified that when they moved in, they believed that the fence marked the boundary between the two houses.

In **Zeglin, supra**, our Supreme Court considered the doctrine of consentable boundaries by acquiescence and explained that "[d]ecisions involving acquiescence are frequently distinguishable from adverse possession cases only in that possession in the former are often based on a mistake as to the location of property lines." **Zeglin, supra** at 327-28, 812 A.2d at 562. (2002). Our Supreme Court noted the definitive nature in which a fence erected between two adjoining properties is a strong indicator of the parties' claim of the land up to that fence as their own. **Id.** at 328 n.4, 812 A.2d at 562 n.4.

This Court has similarly recognized a fence between two properties as proof of a consentable boundary upon that fence line. In **Niles, supra**, this Court explained:

Our courts have long recognized…that a boundary line may be proved by a long-standing fence without proof of a dispute and its settlement by a compromise. In **Dimura v. Williams**, [446 Pa. 316, 286 A.2d 370 (1972)], the court noted:

It cannot be disputed that occupation up to a fence on each side by a party or two parties for more than twenty-one years, each party claiming the land on his side as his own, gives to each an incontestable right up to the fence, and equally whether the fence is precisely on the right line or not. **Id.** [at] 319, 286 A.2d at 371.

In such a situation the parties need not have specifically consented to the location of the line. [**Id.**] It must nevertheless appear that for the requisite twenty-one years a line was recognized and acquiesced in as a boundary by adjoining landowners. **See Miles v. Pennsylvania Coal Co.**, 245 Pa. 94, 91 A. 211 (1914); **Reiter v. McJunkin**, 173 Pa. 82, 33 A. 1012 (1896).

**Niles, supra** at 930 (quoting **Inn Le'Daerda, Inc. v. Davis**, 360 A.2d 209, 215-16 (Pa.Super. 1976) (*en banc*)).

Here, if Appellees had built a fence on the spruce tree line that would have been a strong indicator of their possession up to that line. Nevertheless, Appellees did not build the fence on the boundary line that they now claim. Instead, they erected a fence (which closely aligned with the deeded line) approximately three feet away from the spruce tree line, closer to Appellees' property. Appellants testified that they believed the fence marked the property line and they used the land on their side of the fence as their own. In addition, they performed seasonal maintenance and removed a large tree that was in the disputed area.

We reiterate that to prove a consentable boundary by acquiescence on the spruce tree line, Appellees needed to show that Appellants and Appellees continued to claim and occupy the land on their respective sides of the spruce tree line as their own for the remainder of the 21-year period. ***See Zeglin, supra***. Here, the record does not support the court's findings that both parties claimed and occupied the land on their respective sides of the spruce tree line as their own. Even considering the trial court's finding that the McGowans only claimed and occupied up to the spruce tree line, the record clearly demonstrates that Appellants considered the fence between the two properties as the boundary line, which aligned with the survey that Appellees showed them (***see*** Defense Exhibit 1), and claimed and occupied the land on their side of the fence as their own, including the three-foot strip beyond the spruce tree line up to the fence.

On this record, Appellees have failed to establish that both landowners claimed and occupied the land on their respective sides of the spruce tree line as their own for the 21-year period. ***See Zeglin, supra***. Accordingly, we reverse the judgment entered in favor of Appellees, and remand for entry of judgment in favor of Appellants regarding the disputed land.[4]

Judgment reversed. Case remanded. Jurisdiction is relinquished.

---

[4] Based on our disposition, we need not reach the remainder of Appellants' issues.

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/16/2023</u>